UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

RICHARD FARMER,

                     Plaintiff,

        -against-

LAW OFFICE WEINER & WEINER, LLC,
PAUL I. WEINER, ESQUIRE, LLC,
PAUL IVAN WEINER, ESQ.,
JOSHUA LAWRENCE WEINER, ESQ,
BUDD LARNER, A PROFESSIONAL CORP.,
D/B/A BUDD LARNER, P.C.,
HENRY A. LARNER, ESQ., C.E.O.,
MARK D. LARNER, ESQ., C.E.O.,
MITCHELL RAIT, ESQ. & C.E.O.,
PETER JOHN FRAZZA, ESQ., C.E.O.,
SUSAN REACH WINTERS, ESQ., C.E.O.,
LAW OFFICES OF COUGHLIN DUFFY, LLP,
KEVIN T. COUGHLIN, ESQ., and,
TIMOTHY I. DUFFY, ESQ., et al, 7/30/2019
                    FF

               Defendants.
----------------------------------------------------------------x

CIVIL ACTION

Index No.

**JURY TRIAL DEMANDED**

# 19 CV 7115

SDNY PRO SE OFFICE
RECEIVED
2019 JUL 30 PM 3: 52

## <u>CIVIL ACTION COMPLAINT</u>

    Plaintiff Richard Farmer appearing *Pro Se* brings this Civil Action before the United

States District Court for the Southern District of New York against the Law Office of Weiner &

Weiner, LLC, Paul I. Weiner, Esquire, LLC, Paul Ivan Weiner, Esq., Joshua Lawrence Weiner,

Esq., Budd Larner, A Professional Corporation, d/b/a Budd Larner, P.C., Henry A. Larner, Esq,

& C.E.O., Mark D. Larner, Esq. & C.E.O, Mitchel Rait, Esq., & C.E.O., Peter John Frazza, Esq.,

& C.E.O.,  Susan Reach Winters, Esq., & C.E.O., the Law Office of Coughlin Duffy, LLP, Kevin

T. Coughlin, Esq., & C.E.O and, Timothy I. Duffy, Esq., & C.E.O., ("Defendants"), have

engaged in the willful concealment, deceit and fraud on a United States District Court for the

Southern District of New York and against the Plaintiff in a related case Farmer v. Fzoad.com

17-CV-9300 SDNY COURT, the Defendants engaged in the concealment of the Morristown

New Jersey law firm ("The Shell Company") the Law Office of Weiner & Weiner, LLC, and

Paul I. Weiner, Esquire, LLC., for the willful purposes of violating New York State Laws, in

addition for the purposes of fee splitting and monetary gain, and IRS Tax evasion.

## I.     **PRELIMINARY STATEMENT**

The Defendants who are all New Jersey Attorneys have a history of obtaining, executing

and submitting New York State litigation cases into the United States District Court for the

Southern District of New York, the Defendants with willful intent engaged in attorney

misrepresentation, document fraud, wired fraud and deceit upon a United States District Court

for the Southern District of New York and against the Plaintiff while appearing on Plaintiff's

case as Opposing Counsel in Farmer v. Fzoad.com Enterprises et al. SDNY Docket No. 1:17-cv-

09300. (See Plaintiff's **Exhibit "A"**) Defendant Joshua Weiner appeared for the Defendants

Fzoad.com wrote and submitted a frivolous Motion to Vacate Defendants Default Judgment into

the SDNY Court while concealing the Law Offices of Weiner & Weiner, LLC, falsely stated he

was employed by Budd Larner, P.C., causing deceit in the Court.

Defendant Joshua Weiner Esq., appeared for the opposing parties Fzoad.com made a

number of attorney misrepresentations before the SDNY Court (See Plaintiff's **Exhibit "B"**)

("May 23, 2019 SDNY Court Transcripts the Testimony of Defendants Joshua Lawrence

Weiner, Page 7, Lines 8-25, Page 8 - 12, Lines 1-25, Page 13. Lines 1-2,  Page 23, Lines 17-25,

Page 24, Lines 1-23, Pages 26, Lines 1-25, Pages 27, Lines 1-25, Pages 28, Lines 1-25, Pages 29,

1-25, Pages 30, Lines 1-25, Pages 31, Lines 1-25, Page 33, Line 1-25., Pages 34, Lines 1-25, Page 35, Lines 1-25").

The purpose of Defendants deceit to have District Judge George B. Daniels July 30, 2018 decision and order in favor of the Plaintiff overturned through deceit directly affecting the courts administration and the Plaintiff's ability to seek justice by concealing their Morristown, New Jersey office, Defendants the Law Office of Weiner & Weiner, LLC and Paul I Weiner, LLC, the true address "The Shell Company's." (See Plaintiff's **Exhibit "C"**) the active concealed "Shell Company" based in Morristown New Jersey operated by father and son Paul Ivan Weiner Esq. and Joshua Lawrence Weiner Esq. Defendants for the purposes of evading New York State Laws from year 2009 thru July 30, 2019, 10 years of fraud and deceit.

Defendants used the Co-Defendants company's, advertisement, and website addresses to set up fraudulent New York State Administration Registered Status and Federal Admission status using Co-Defendants names and address Attorney State pretending to be New York State licensed registered Attorney by setting up ("Virtual Office Networks Schemes")(See Plaintiff's **Exhibit "D"**)   via the World Wide Web with the Co-Defendants, the purpose to evade New York State ***Judiciary Laws*** the true reality Defendants had no working offices in New York State and had no business litigating cases in the State of New York and being on Plaintiff's  case Farmer v. Fzoad.com et al. in the SDNY, in violation of New York State Judiciary Statutes and violating Federal Law and other New York State Laws.

The Defendants, the Law Offices of Weiner & Weiner, LLC, and Paul I. Weiner, Esquire, LLC, Paul Ivan Weiner Esq., ("PAUL WEINER") New York State Attorney Registration Number: [1648161], and son Joshua Lawrence Weiner Esq. (" JOSHUA WEINER") Esq., New

York State Attorney Registration Number: [4510509] have concealed their "The Shell Company" since 2009, used their New York State Attorney Registration Numbers to appear in [2] cases in the SDNY under [1] a False Claims Act case in which they hoped to win a wind fall of money for their hidden "Shell Company" had no right to appear on that case but no one at that time questioned the New Jersey Attorneys when they appeared for the Plaintiff. (See Plaintiff's **Exhibit "E"**) US EX REL. BRIAN ARYAI v. SKANSKA, No.09-CV-5456 (LGS) USDC, S.D.NY 2009 thru March 19, 2019.

Case number [2] involved the same Plaintiff that appeared in the False Claims Act case appeared in the second case [3] years later. (See Plaintiff's **Exhibit "F"**) Brian Aryai v. Forfeiture Support Associates, 25 F. Supp. 3d 376 - No.10-CV-8952 (LAP) USDC, S.D.NY Signed August 27, 2012.

From 2009 through March 19, 2019 The Defendants, the Law Offices of Weiner & Weiner, LLC, and Paul I. Weiner, Esquire, LLC, Paul Ivan Weiner Esq., ("PAUL WEINER") New York State Attorney Registration Number: [1648161], and son Joshua Lawrence Weiner Esq.("JOSHUA WEINER") New York State Attorney Registration Number: [4510509] (See Plaintiff's **Exhibit "G"**) made false allegations claiming to work for Budd Larner, P.C., were actually paid subcontractors not employees but that did not stop the father and son pair from using Budd Larner, P.C., name address, website and larger status to illegally register their names with the New York State Office of Court Administrations to illegally obtain an Attorney Registration number so they can be admitted to practice Federal litigation in the United States District Court for the SDNY and EDNY, while concealing their true address and "Shell Company" in Morristown New Jersey, it's impossible for Defendants to be working at both law firms at the same time so they used a sophisticated way to make it appear that they were working

at Budd, Larner P.C., by implementing the 'Virtual Office Scheme" while concealing their true full time working address from other New York State Courts to evade New York States ***Judiciary Laws***.

Plaintiff's case is now one of those cases involved in the deceit and it starts with the Law Offices of Weiner & Weiner, LLC, and Paul I. Weiner, Esquire, LLC, Paul Ivan Weiner Esq., ("PAUL WEINER") New York State Attorney Registration Number: [1648161], and son Joshua Lawrence Weiner (" JOSHUA WEINER") Esq., New York State Attorney Registration Number: [4510509], with intent concealed their New Jersey law firm located at 60 Washington St #101g, Morristown, NJ 07960, in the State of New Jersey, in Plaintiff's case Farmer v. Fzoad.com et.al, WEINER with intent concealed the New Jersey firm address to fool the Southern District of New York sitting Judges and the Plaintiff because they do not have a ***physical*** law office in the State of New York which is required by law, ("In Arrowhead Capital, the Appellate Division affirmed Justice Kornreich's dismissal of the plaintiff's complaint due entirely to its non-resident lawyer's failure, in violation of Judiciary Law § 470, to maintain an office in New York."), so JOSHUA WEINER used other New Jersey firms as a "virtual office" (See, Marina District Dev. Co. v. Taledano, 60 Misc.3d 1203A (NOR) (Sup. Ct., New York Co. June 18, 2018) the Co-Defendants Budd Larner, P.C., ("BUDD LARNER") and Coughlin Duffy, LLP, ("COUGHLIN DUFFY") to get around New York State Laws to engage in cover up, fraud and deceit that was used to taint Plaintiff's case being heard in the SDNY. In addition JOSHUA WEINER failed to identify himself as a partner or an associate of BUDD LARNER or with COUGHLIN DUFFY. (See Plaintiff's **Exhibit "H"**) Paul I. Weiner's E-Book PDF posted on the World Wide Web illustrated and authored **show the true suite number** [5G], while suite 1G is publicly advertised for deceitful purposes to the public on the World Wide Web through advertising and company

letterheads because they don't want to be found if New Jersey tax authorities or the Internal Revenue a/k/a the I.R.S. came knocking.

## II.   <u>INTRODUCTION</u>

1.        Plaintiff pleads fraud with particularity required by CPLR 3016(b) is to inform a defendant of the complained-of conduct. For that reason, CPLR 3016(b) "should not be so strictly interpreted as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting a fraud." 10 N.Y.3d at 491 (internal quotation marks and citation omitted). Therefore, at the pleading stage, a complaint need only "allege the basic facts to establish the elements of the cause of action." *Id.* at 492. Thus, a plaintiff will satisfy CPLR 3016(b) when the facts permit a "reasonable inference" of the alleged misconduct. [*Id. Pludeman v. Northern Leasing Sys., Inc.*, 10 N.Y.3d 486, 491 (2008)].

2.        This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 487(1), (*Amalfitano v Rosenberg*, 12 NY3d 8 [2009]) against the named defendants with the intent to deceive the court or any party.

3.        This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 468-A Biennial registration of attorneys Judiciary (JUD) 1. Every attorney and counselor-at-law admitted to practice in this state on or before January first, nineteen hundred eighty-two, whether resident or nonresident, shall file a biennial registration statement with the administrative office of the courts on or before March first, nineteen hundred eighty-two in such form as the chief

administrator of the courts shall prescribe. An attorney who is admitted to practice after

January first, nineteen hundred eighty-two and on or before January first, nineteen

hundred eighty-six, shall file a registration statement within sixty days after the date of

admission. An attorney who is admitted to practice after January first, nineteen hundred

eighty-six shall file a registration statement prior to taking the constitutional oath of

office.

4.      This action has been initiated by Richard Farmer (hereinafter referred to as

"Plaintiff") for violations of New York Judiciary Law § 470 Judiciary (JUD), Attorneys

having offices in this state may reside in adjoining state, Attorneys having offices in this

state may reside in adjoining state. A person, regularly admitted to practice as an attorney

and counselor, in the courts of record of this state, whose office for the transaction of law

business is within the state, may practice as such attorney or counselor, although he

resides in an adjoining state.

5.      This action has been initiated by Richard Farmer (hereinafter referred to as

"Plaintiff") for violations of New York Judiciary Law § 476, Action against attorney for

lending his name in suits and against person using name Judiciary (JUD) Action against

attorney for lending his name in suits and against person using name. If an attorney

knowingly permits a person not being his general law partner, or a clerk in his office, to

sue out a mandate, or to prosecute or defend an action in his name, he, and the person

who so uses his name, each forfeits to the party against whom the mandate has been sued

out, or the action prosecuted or defended, the sum of fifty dollars, to be recovered in an

action.

6.      This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 476-A, Action for unlawful practice of the law Judiciary (JUD), 1. The attorney-general may maintain an action upon his or her own information or upon the complaint of a private person or of a bar association organized and existing under the laws of this state against any person, partnership, corporation, or association, and any employee, agent, director, or officer thereof who commits any act or engages in any conduct prohibited by law as constituting the unlawful practice of the law. The term "action" as used in this subdivision shall be construed to include both civil actions and criminal actions.

The term "unlawful practice of the law" as used in this article shall include, but is not limited to,

(a) any act prohibited by penal law sections two hundred seventy, two hundred seventy-a, two hundred seventy-e, two hundred seventy-one, two hundred seventy-five, two hundred seventy-five-a, two hundred seventy-six, two hundred eighty or fourteen hundred fifty-two, or

(b) any other act forbidden by law to be done by any person not regularly licensed and admitted to practice law in this state, or

(c) any act punishable by the supreme court as a criminal contempt of court under section seven hundred fifty-B of this chapter.

2.      Such a civil action may also be maintained by a bar association organized and existing under the laws of the state of New York, upon an application to the supreme court of the state of New York, or a justice thereof, for leave to bring the same by such bar association on good cause shown therefor and proof that a written request was made

upon the attorney-general to bring such an action and that more than twenty days have elapsed since the making of such request and he or she has failed or refused to bring such an action.

7.      This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 476-B, Injunction to restrain defendant from unlawful practice of the law Judiciary (JUD), Injunction to restrain defendant from unlawful practice of the law. In a civil action brought as prescribed in section four hundred seventy-six-a of this article, the final judgment in favor of the plaintiff shall perpetually restrain the defendant from the commission or continuance of the act complained of. A temporary restraining order to restrain the commission or continuance thereof may be granted upon proof, by affidavit, that the defendant has violated any of the provisions of such section. The provisions of statute or rule relating generally to injunctions as provisional remedies in actions apply to such a temporary restraining order and the proceedings thereupon, except that the plaintiff shall not be required to file any undertaking before the issuance of such temporary restraining order, shall not be liable for costs and shall not be liable for damages sustained by reason of the restraining order in cases where judgment is rendered in favor of the person, firm or corporation sought to be enjoined.

8.      This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 478, Practicing or appearing as attorney-at-law without being admitted and registered Judiciary (JUD), Practicing or appearing as attorney-at-law without being admitted and registered. It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and

counselor-at-law for a person other than himself or herself in a court of record in this

state, or to furnish attorneys or counsel or an attorney and counsel to render legal

services, or to hold himself or herself out to the public as being entitled to practice law as

aforesaid, or in any other manner, or to assume to be an attorney or counselor-at-law, or

to assume, use, or advertise the title of lawyer, or attorney and counselor-at-law, or

attorney-at-law or counselor-at-law, or attorney, or counselor, or attorney and counselor,

or equivalent terms in any language, in such manner as to convey the impression that he

or she is a legal practitioner of law or in any manner to advertise that he or she either

alone or together with any other persons or person has, owns, conducts or maintains a law

office or law and collection office, or office of any kind for the practice of law, without

having first been duly and regularly licensed and admitted to practice law in the courts of

record of this state, and without having taken the constitutional oath. Provided, however,

that nothing in this section shall be held to apply (1) to officers of societies for the

prevention of cruelty to animals, duly appointed, when exercising the special powers

conferred upon such corporations under section fourteen hundred three of the not-for-

profit corporation law; or (2) to law students who have completed at least two semesters

of law school or persons who have graduated from a law school, who have taken the

examination for admittance to practice law in the courts of record in the state

immediately available after graduation from law school, or the examination immediately

available after being notified by the board of law examiners that they failed to pass said

exam, and who have not been notified by the board of law examiners that they have

failed to pass two such examinations, acting under the supervision of a legal aid

organization when such students and persons are acting under a program approved by the

appellate division of the supreme court of the department in which the principal office of such organization is located and specifying the extent to which such students and persons may engage in activities otherwise prohibited by this statute; or (3) to law students who have completed at least two semesters of law school, or to persons who have graduated from a law school approved pursuant to the rules of the court of appeals for the admission of attorneys and counselors-at-law and who have taken the examination for admission to practice as an attorney and counselor-at-law immediately available after graduation from law school or the examination immediately available after being notified by the board of law examiners that they failed to pass said exam, and who have not been notified by the board of law examiners that they have failed to pass two such examinations, when such students or persons are acting under the supervision of the state or a subdivision thereof or of any officer or agency of the state or a subdivision thereof, pursuant to a program approved by the appellate division of the supreme court of the department within which such activities are taking place and specifying the extent to which they may engage in activities otherwise prohibited by this statute and those powers of the supervising governmental entity or officer in connection with which they may engage in such activities; or (4) an attorney and counselor-at-law or the equivalent who is admitted to the bar in another state, territory, district or foreign country and who has been admitted to practice pro hac vice in the state of New York within the limitations prescribed in the rules of the court of appeals; or (5) an attorney licensed as a legal consultant under rules adopted by the court of appeals pursuant to subdivision six of section fifty-three of this chapter and rendering legal services in the state within limitations prescribed in such rules.

9.      This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 483, Signs advertising services as attorney at law, Judiciary (JUD), It shall be unlawful for any person to maintain on real property or to permit or allow any other person to maintain, on such property a sign, in any language, to the effect that an attorney-at-law or legal services are available therein unless the full name of the attorney-at-law or the firm rendering such services is set forth thereon. In any prosecution for violation of the provisions of this section the existence of such a sign on real property shall be presumptive evidence that it was placed or permitted to exist thereon with the knowledge and consent of the person or persons in possession of said premises.

10.     This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 484, None but attorneys to practice in the state, Judiciary (JUD), No natural person shall ask or receive, directly or indirectly, compensation for appearing for a person other than himself as attorney in any court or before any magistrate, or for preparing deeds, mortgages, assignments, discharges, leases or any other instruments affecting real estate, wills, codicils, or any other instrument affecting the disposition of property after death, or decedents' estates, or pleadings of any kind in any action brought before any court of record in this state, or make it a business to practice for another as an attorney in any court or before any magistrate unless he has been regularly admitted to practice, as an attorney or counselor, in the courts of record in the state; but nothing in this section shall apply (1) to officers of societies for the prevention of cruelty to animals, duly appointed, when exercising the special powers conferred upon such corporations under section fourteen hundred three of

the not-for-profit corporation law; or (2) to law students who have completed at least two semesters of law school or persons who have graduated from a law school, who have taken the examination for admittance to practice law in the courts of record in the state immediately available after graduation from law school, or the examination immediately available after being notified by the board of law examiners that they failed to pass said exam, and who have not been notified by the board of law examiners that they have failed to pass two such examinations, acting under the supervision of a legal aid organization, when such students and persons are acting under a program approved by the appellate division of the supreme court of the department in which the principal office of such organization is located and specifying the extent to which such students and persons may engage in activities prohibited by this statute; or (3) to persons who have graduated from a law school approved pursuant to the rules of the court of appeals for the admission of attorneys and counselors-at-law and who have taken the examination for admission to practice as an attorney and counselor-at-law immediately available after graduation from law school or the examination immediately available after being notified by the board of law examiners that they failed to pass said exam, and who have not been notified by the board of law examiners that they have failed to pass two such examinations, when such persons are acting under the supervision of the state or a subdivision thereof or of any officer or agency of the state or a subdivision thereof, pursuant to a program approved by the appellate division of the supreme court of the department within which such activities are taking place and specifying the extent to which they may engage in activities otherwise prohibited by this statute and those powers of the supervising governmental entity or officer in connection with which they may engage in such activities; or (4) an

attorney and counselor-at-law or the equivalent who is admitted to the bar in another state, territory, district or foreign country and who has been admitted to practice pro hac vice in the State of New York within the limitations prescribed in the rules of the court of appeals; or (5) an attorney licensed as a legal consultant under rules adopted by the court of appeals pursuant to subdivision six of section fifty-three of this chapter and rendering legal services in the state within limitations prescribed in such rules.

11.     This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 485, Violation of certain preceding sections a misdemeanor, Judiciary (JUD), Except as provided in section four hundred eighty-five-a of this article, any person violating the provisions of section four hundred seventy-eight, four hundred seventy-nine, four hundred eighty, four hundred eighty-one, four hundred eighty-two, four hundred eighty-three or four hundred eighty-four of this article, shall be guilty of a misdemeanor.

12.     This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 485-A, **Violation of certain sections a class E felony**, Judiciary (JUD), Any person who violates the provisions of sections four hundred seventy-eight, four hundred eighty-four, four hundred eighty-six or four hundred ninety-five of this article is guilty of a class E felony when he or she: (1) falsely holds himself or herself out as a person licensed to practice law in this state, a person otherwise permitted to practice law in this state, or a person who can provide services that only attorneys are authorized to provide; and (2) causes another person to suffer monetary loss or damages exceeding one thousand dollars or other material damage resulting from impairment of a legal right to which he or she is entitled.

13.     This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") for violations of New York Judiciary Law § 495, Corporations and voluntary associations not to practice law, Judiciary (JUD),

1. No corporation or voluntary association shall

(a) practice or appear as an attorney-at-law for any person in any court in this state or before any judicial body, nor

(b) make it a business to practice as an attorney-at-law, for any person, in any of said courts, nor

(c) hold itself out to the public as being entitled to practice law, or to render legal services or advice, nor

(d) furnish attorneys or counsel, nor

(e) render legal services of any kind in actions or proceedings of any nature or in any other way or manner, nor

(f) assume in any other manner to be entitled to practice law, nor

(g) assume, use or advertise the title of lawyer or attorney, attorney-at-law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law or to furnish legal advice, services or counsel, nor

(h) advertise that either alone or together with or by or through any person whether or not a duly and regularly admitted attorney-at-law, it has, owns, conducts or maintains a law office or an office for the practice of law, or for furnishing legal advice, services or counsel.

2. No corporation or voluntary association shall itself or by or through its officers, agents or employees, solicit any claim or demand, or taken an assignment thereof, for the

purpose of representing any person in the pursuit of any civil remedy, nor solicit any claim or demand for the purpose of representing as attorney-at-law, or of furnishing legal advice, services or counsel to, a person sued or about to be sued in any action or proceeding or against whom an action or proceeding has been or is about to be brought, or who may be affected by any action or proceeding which has been or may be instituted in any court or before any judicial body.

Nothing herein contained shall affect any assignment heretofore or hereafter taken by any moneyed corporation authorized to do business in the state of New York or its nominee pursuant to a subrogation agreement or a salvage operation. Any corporation or voluntary association violating the provisions of this subdivision or of subdivision one of this section shall be liable to a fine of not more than five thousand dollars and every officer, trustee, director, agent or employee of such corporation or voluntary association who directly or indirectly engages in any of the acts prohibited in this subdivision or in subdivision one of this section or assists such corporation or voluntary association to do such prohibited acts is guilty of a misdemeanor.

The fact that such officer, trustee, director, agent or employee shall be a duly and regularly admitted attorney-at-law, shall not be held to permit or allow any such corporation or voluntary association to do the acts so prohibited nor shall such fact be a defense upon the trial of any of the persons mentioned herein for a violation of the provisions of this subdivision or subdivision one of this section.

3. No voluntary association or corporation shall ask or receive directly or indirectly, compensation for preparing deeds, mortgages, assignments, discharges, leases, or any other instruments affecting real estate, wills, codicils, or any other instruments

affecting disposition of property after death or decedents' estates, or pleadings of any kind in actions or proceedings of any nature. Any association or corporation violating the provisions of this subdivision is guilty of a misdemeanor unless otherwise provided by section four hundred eighty-five-a of this article.

4. Subdivisions one and two of this section shall not apply to any corporation or voluntary association lawfully engaged in a business authorized by the provisions of any existing statute.

5. This section shall not apply to a corporation or voluntary association lawfully engaged in the examination and insuring of titles to real property, in the preparation of any deeds, mortgages, assignments, discharges, leases or any other instruments affecting real property insofar as such instruments are necessary to the examination and insuring of titles, and necessary or incidental to loans made by any such corporation or association; nor shall it prohibit a corporation or voluntary association from employing an attorney or attorneys in and about its own immediate affairs or in any litigation to which it is or may be a party.

Nothing herein contained shall be construed to prevent a corporation or association from furnishing to any person, lawfully engaged in the practice of law, such information or such clerical services in and about his professional work as, except for the provisions of this section, may be lawful, provided that at all times the lawyer receiving such information or such services shall maintain full professional and direct responsibility to his clients for the information and services so received. But no corporation shall be permitted to render any services which cannot lawfully be rendered

by a person not admitted to practice law in this state nor to solicit directly or indirectly professional employment for a lawyer.

6. This section shall not apply to a corporation organized under article fifteen, or authorized to do business in this state under article fifteen-A, of the business corporation law.

7. This section does not apply to organizations which offer prepaid legal services; to non-profit organizations whether incorporated or unincorporated, organized and operating primarily for a purpose other than the provision of legal services and which furnish legal services as an incidental activity in furtherance of their primary purpose; or to organizations which have as their primary purpose the furnishing of legal services to indigent persons.

14.    This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") Violations of 2011 US Code Title 18 - Crimes and Criminal Procedure Part I - CRIMES (§§ 1 - 2725);

15.    This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") Violations of 18 USC § Chapter 63 - MAIL FRAUD AND OTHER FRAUD OFFENSES (§§ 1341 - 1351);

16.    This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") Violations of 18 USC § 1343 (2011), §1343. Fraud by wire, radio, or television, Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire,

radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.,

17.       This action has been initiated by Richard Farmer (hereinafter referred to as "Plaintiff") Violations New York State Section 349-350, Deceptive acts and practices unlawful General Business (GBS) and False advertising unlawful General Business (GBS).

## III.       STATEMENT OF FACTS

18.       The Law Offices of Weiner & Weiner, LLC, and Paul I. Weiner, Esquire, LLC, Paul Ivan Weiner Esq., and son Joshua Lawrence Weiner Esq., have been conducting this scheme of deceit dating back to 2009 inside the United States District Court for the Southern District of New York for years, (See Plaintiff's **Exhibit "E" and "F"**) that Defendants have no business being litigating case in the State of New York because they are New Jersey Attorneys registered in the State of New Jersey not registered in the State of New York. Through trickery deceit and fraud the New Jersey Attorneys and the Co-Defendants for years helped each other out by creating optical illusions by working with their associates to get around New York State laws in which they succeeded by fooling District Court Judges and Magistrate Judges inside the SDNY and the EDNY courts administration until now.

19.       Since the submission of Joshua Weiner's November 19, 2018 filing Motion to Vacate Defendants Default Judgment, The Law Offices of Weiner & Weiner, LLC, and Paul I. Weiner, Esquire, LLC, Paul Ivan Weiner Esq., and son Joshua Lawrence Weiner

Esq., has made an attempt to conceal the firm's true Morristown New Jersey address that can only be found on the World Wide Web by using the firm's original telephone numbers and fax, Plaintiff has located those original telephone numbers and fax numbers from the firms letterheads and internet promo's to other New Jersey Law Firms. Counsel Weiner who controls the internet marketing content of the law firm is very good at concealing content but Plaintiff is very good at finding hidden content when the nature of deceit is being committed that involves a United States District Court and the Plaintiff.

20.      In January 2019 after learning that Budd Larner, P.C. will close after a Partner was indicted by the United States Attorneys for the Southern District of New York, through trickery and deceit Joshua Weiner and Paul I. Weiner decided that it was time to move on from Budd Larner, P.C., to set up another ("Virtual Office Scheme") with the Law Firm of Coughlin Duffy LLP, located at 350 Mt. Kemble Avenue in Morristown New Jersey writes, advertises and displays the following messages on the world wide web and the Law Offices of Weiner & Weiner, LLC website with the intent to deceive the public, the New York Courts and the Plaintiff; they are not former members of the Law Offices of Weiner & Weiner LLC, the law office is still open and operating under the same name well after Coughlin Duffy posted the advertisement on April 24, 2019.

(See Plaintiff's **Exhibit "I"**) https://www.weineremploymentlaw.com/ website posting dated April 24; 2019 on the website of the Law of Offices of Weiner & Weiner, LLC with a posting from COUGHLIN DUFFY welcoming the merger, while the Law of Offices of Weiner & Weiner, LLC, remain open and concealed. (See Plaintiff's **Exhibit "J"**)

Paul I. Weiner and Joshua L. Weiner

Formerly members of Law Offices of Weiner & Weiner LLC,

are pleased to announce they have joined



**Coughlin Duffy** LLP

www.coughlinduffy.com

21.     The named Defendants use elaborate voice mail systems and an off-site contracted switchboard company to make it look there attorneys are actually working out of an office space but they don't, anyone that calls the number are quickly switched to a voice mail recording is nothing but an elaborate optical illusion of smoke, mirrors, and special effects to make it look like the WEINER firm works for COUGHLIN DUFFY is the same ruse they used with BUDD LARNER firm when JOSHUA WEINER filed the Motion to Vacate Defendants Default Judgment in Farmer v. Fzoad.com et al, case on November 19, 2018.  (See Plaintiff's **Exhibit "A"**)  WEINERS Motion to Vacate Defendants Default Judgment dated November 19, 2018.

22.     Defendants the Law Offices of Weiner & Weiner, LLC who are operating their real business in the State of New Jersey at an undisclosed location in State of New Jersey now undisclosed are operating a shell game ("A Swindling Trick") a/k/a the cups and balls trick and thimblerig, a rigged system that's being kept secret from litigants in the State of New York, designed to trick and fool the New York State Courts and its administration manipulated or controlled by deceptive or dishonest means. The purpose

of the ruse the Law Offices of Weiner and Weiner, LLC, do not have a working office in

the State of New York that's required by New York State law so the owners father and

son Paul Ivan Weiner and Joshua L. Weiner go out, seek and obtain the authorization and

the use of other firms Co-Defendants Budd Larner, P.C., and Coughlin Duffy, LLP, to

conceal their businesses deceit and fraud which also violates New York State Law.

23.       The ruse was revealed on April 24, 2019 when Coughlin Duffy LLP, a firm

headquartered in the State of New Jersey with offices in New York advertised on the

World Wide Web that the Law Offices of Weiner & Weiner LLC, (See Plaintiff's

**Exhibit "I" and "J"**), Attorneys in New Jersey had merged with the law firm Coughlin

Duffy LLP, and the merger involves the add on addition of employment law litigation

services to the Coughlin Duffy law firm. Yet another cloak and mirage shell game to

keep the offices of Weiner & Weiner, LLC hidden from New York State courts and New

York State Litigants.

24.       The Law office of Weiner & Weiner, LLC has always operated their New Jersey

law firm the two man boutique operation at 60 Washington St #101g, Morristown, NJ

07960 since January 1982. (See Plaintiff's **Exhibit "K"**) Paul I. Weiner Esq. and Joshua

Weiner's LinkedIn Page and public admission.

25.       The family owned law practice The Law office of Weiner & Weiner, LLC

subcontracted their legal services out to other firms thereby concealing their business of

operations therefore creating the illusion that they are actual employees of the firms that

they represent but the true nature they are independent contractors employed under their

own LLC.

26.     If by chance a problem arises which has never risen until now Defendants only
defense will be; we have offices in the City of New York, so the questions remains; why
haven't you disclosed your offices the Law Offices of Weiner & Weiner, LLC doing
business at 60 Washington St #101g, Morristown, NJ 07960 to the New York State
Courts.

27.     Budd Larner, LLP does not have an office in Manhattan New York they have a
telephone voicemail set up that's linked to the McLaughlin & Stern LLP, the "Virtual
Office Scheme") the firm's voicemail systems the firm occupies floors 15 through 22 at
260 Madison Avenue in New York City, Budd Larner, LLP alleged voicemail system
occupies the 21st FL. not FL. 18 that's listed on the company's web page with has
telephone numbers and voice mail systems linked to offices in different states that do not
exist was not admitted to the U.S. District Court for the SDNY and the EDNY courts as
advertised in their business letterhead and web page were erroneous, were used to
deceive the public, the court or any party described in New York State Judiciary Law
New York Judiciary Law § 487(1), (*Amalfitano v Rosenberg*, 12 NY3d 8 [2009]). In July
2019 Defendant Mitchel Rait Esq. made an announcement on the company's website
www.buddlarner.com that the company will be closing after 85 years in business. (See
Plaintiff's **Exhibit "L"**)

28.     Plaintiff supplies a true copy of Joshua L. Weiner's Budd Larner, "Virtual Office
Web Page Scheme" of deceit and fraud into evidence. (See Plaintiff's **Exhibit "M"**)

29.     Plaintiff supplies a true copy of Paul I. Weiner's Budd Larner, "Virtual Office
Web Page Scheme" of deceit and fraud into evidence. (See Plaintiff's **Exhibit "O"**)

30.     Plaintiff supplies a history of cases litigated by the Law Offices of Weiner &

Weiner, LLC and its Co-Defendants Budd, Larner, P.C., showing and confirming that

both Defendants business operations had knowledge and co-mingled in cases litigated in

in the State of New York and conducted fraud in the United States District Court in the

SDNY, see specifically Plaintiff **Exhibit "T"** will confirm that Joshua Weiner Esq.

continues the fraud and deceit with Co-Defendants Coughlin Duffy, LLP.

(See Plaintiff's **Exhibit "P", "Q", "R", "S" and "T"**)

   a)  **Exhibit "P"** *id.* No. 00-CV-3317 (WCC) DIST, SDNY, November 3, 2000.

   b)  **Exhibit "Q"** *id.* No. 08-CV-2756 DIST, SDNY, August 13, 2008.

   c)  **Exhibit "R"** *id.* No. 2015-CV-3963 (CCC) DIST, SDNY, July 27, 2016.

   d)  **Exhibit "S"** *id.* No. 15-CV-4353 (SJF)(GRB) DIST, SDNY, September 25, 2017.

   e)  **Exhibit "T"** *id.* No. 18-CV-10110 (PAE) DIST, SDNY, June 12, 2019. Joshua
       Weiner, Coughlin Duffy, LLP.


## IV.  HISTORY AND CONCEALMENT
### OF
### THE LAW OFFICE OF WEINER & WEINER, LLC, and
### PAUL I WEINER ESQUIRE, LLC

### ["A New Jersey Shell Company"]

31.     Plaintiff uncovered a scheme of deceit and fraud that involves each Co-Defendant

starting with the Law Offices of Weiner & Weiner, LLC, the hidden concealed  "Shell

Company" based in Morristown New Jersey, Defendants father and son New Jersey

Attorneys Joshua Lawrence Weiner and Paul Ivan Weiner, together with Co-Defendants

Budd Larner, P.C., and Coughlin Duffy, LLP, executed upon a United States District

Court for the Southern District of New York and the Plaintiff the fraud and deceit to

overturn District Judge George B. Daniels July 30, 2018 Decision and Order for Default

Judgment in favor of the Plaintiff that occurred [1] year ago from tomorrow to have

Plaintiff's case tried in the New York Federal Court after failing to have a meritorious

excuse to have their defense Default Judgment overturned, the Co-Defendants the Law

Offices of Weiner & Weiner, LLC based in Morristown New Jersey who has no law

offices in the State of New York used other large New Jersey law firms ("Close

associates to father Paul I. Weiner") also based in Morristown New Jersey such as each

Co-Defendant to appear on Plaintiff's case in the SDNY while concealing their own

business and operations "The Shell Company" in Morristown New Jersey because New

Jersey Attorney's and  now current Defendants Joshua Weiner having concealed  his

Morristown NJ law office have no business appearing on Plaintiff's case.


32.      Defendant Joshua L. Weiner Esq., and his Co Defendant father Paul Ivan Weiner

Esq., with the consent and cooperation of each Co-Defendant also used the other Co-

Defendants business names and addresses to apply falsely for New York State

Administration Attorney Registration Status and Federal Admissions registration in both

United States District Court for the SDNY and EDNY, falsely appear on New York State

litigation cases while concealing their own Morristown New Jersey law office  "The

Shell Company"  and they have been do so with intent since 2009 that violates Federal

and State law in the State of New York and in the State of New Jersey. The scheme of

deceit is known as the ("Virtual Office Scheme"), the Defendants used this highly

sophisticated optical telephone, live personal and data software that's linked and set up to

the Defendants cellular phones, email and business website to make it appear that the New Jersey lawyers have an onsite operating office, and a live secretary but it's nothing but an optical illusion of smoke and mirrors and C.G.I., a noun; computer-generated imagery (special visual effects created using computer software). "fewer real stunts are performed because filmmakers can just use CGI", the best person who actually described C.G.I. the best is the famous director George Lucas who described CGI as a trick.

33.     Defendants use the Virtual Office Scheme to conduct a massive amount of document fraud and wire fraud to New York State Courts from their New Jersey offices to make it appear that they have offices in New York City, Budd Larner, P.C., also used the Virtual Office scheme but the reality is they don't have offices in New York City, they advertise that they have offices in New York City but they don't they use the Virtual Office Scheme to get around New York States Judiciary laws but in reality they are violating New York State law by performing a trick.

34.     Now Coughlin Duffy, LLP does have an actual office space in New York City at 88 Pine St, 28th Floor Wall Street Plaza, New York, NY 10005, but its only used for insurance litigation, the company does not have an employment law division department in its law offices Headquartered at 350 Mount Kemble Avenue in Morris Town, NJ or at its New York City address it's a "Virtual Office Scheme" that was implemented on April 24, 2019 by both parties the Law Offices of Weiner & Weiner, LLC and its Co-Defendants Coughlin Duffy, LLP to engage in consumer fraud and deceit in New York State to fool the New York State Courts, its Court Administration and New York State consumers who may require legal assistance.

## V.   JURISDICTION AND VENUE

35.       This Court may exercise original subject matter jurisdiction over the instant action

pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the

United States.

36.       This Court has supplemental jurisdiction over Plaintiff's state law claim(s)

because such claims arise out of the same common nucleus of operative facts as his

federal claims asserted herein.

37.       This Court may properly maintain personal jurisdiction over Defendants because

Defendants' contacts with this state and this judicial district are sufficient for the exercise

of jurisdiction over Defendants to comply with traditional notions of fair play and

substantial justice, satisfying the standard set forth by the United States Supreme Court in

International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

38.       Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this

district because Defendants reside in and/or conduct business in this judicial district and

because a substantial part of the acts and/or omissions giving rise to the claims set forth

herein occurred in this judicial district.

39.       The fraud and Deceit occurred in the United States District Court for the Southern

District of New York and against the Plaintiff in a related case being heard in the same

Court, the named Defendants are registered in the State of New York with Defendants the

Law Offices of Weiner & Weiner, LLC, who has obtained their New York State

registration by false means and by concealing their true business operations and address.

## VI.    **PARTIES**

40.        Defendant the Law Offices of Weiner & Weiner, LLC, and Paul I. Weiner,

Esquire, LLC, Paul Ivan Weiner Esq., and son Joshua Lawrence Weiner Esq., New York

State Attorney Registration Number: [1648161] ("Corporate Defendant") is a New York

domestic for-profit entity, engages in the business of providing legal services. He is

personally liable herein under applicable law(s) permitting personal liability because he

exercised control and supervision over Plaintiff, was aware of his protected rights under

the laws asserted herein and is responsible for overseeing payroll matters and for

complying with federal and state wage laws.

41.        Defendant Budd Larner, a Professional Corporation, d/b/a Budd Larner, P.C.,

New York State DOS ID #: 994276, Henry A. Larner Esq., New York State Attorney

Registration Number: [2146587] ("Defendant") is upon information and belief, the

owner, chairman, chief executive officer and/or overseer of operations within the

Corporate Defendant.  He is personally liable herein under applicable law(s) permitting

personal liability because he exercised control and supervision over Plaintiff, was aware

of his protected rights under the laws asserted herein and is responsible for overseeing

payroll matters and for complying with federal and state wage laws.

42.        Defendant Budd Larner, a Professional Corporation, d/b/a Budd Larner, P.C.,

New York State DOS ID #: 994276, Mark D. Larner Esq., New York State Attorney

Registration Number: [None] ("Defendant") is upon information and belief, the owner,

chairman, chief executive officer and/or overseer of operations within the Corporate

Defendant.  He is personally liable herein under applicable law(s) permitting personal

liability because he exercised control and supervision over Plaintiff, was aware of his protected rights under the laws asserted herein and is responsible for overseeing payroll matters and for complying with federal and state wage laws.

43.     Defendant Budd Larner, a Professional Corporation, d/b/a Budd Larner, P.C., New York State DOS ID #: 994276, Mitchel Rait Esq., New York State Attorney Registration Number: [2172062] ("Defendant") is upon information and belief, the owner, chairman, chief executive officer and/or overseer of operations within the Corporate Defendant.  He is personally liable herein under applicable law(s) permitting personal liability because he exercised control and supervision over Plaintiff, was aware of his protected rights under the laws asserted herein and is responsible for overseeing payroll matters and for complying with federal and state wage laws.

44.     Defendant Budd Larner, a Professional Corporation, d/b/a Budd Larner, P.C., New York State DOS ID #: 994276, Peter John Frazza Esq., New York State Attorney Registration Number: [None] ("Defendant") is upon information and belief, the owner, chairman, chief executive officer and/or overseer of operations within the Corporate Defendant.  He is personally liable herein under applicable law(s) permitting personal liability because he exercised control and supervision over Plaintiff, was aware of his protected rights under the laws asserted herein and is responsible for overseeing payroll matters and for complying with federal and state wage laws.

45.     Defendant Budd Larner, a Professional Corporation, d/b/a Budd Larner, P.C., New York State DOS ID #: 994276, Susan Reach Winters Esq., New York State Attorney Registration Number: [None] ("Defendant") is upon information and belief, the

owner, chairman, chief executive officer and/or overseer of operations within the Corporate Defendant. He is personally liable herein under applicable law(s) permitting personal liability because he exercised control and supervision over Plaintiff, was aware of his protected rights under the laws asserted herein and is responsible for overseeing payroll matters and for complying with federal and state wage laws.

46.     Defendant Law offices of Coughlin Duffy , a Professional Corporation, d/b/a Coughlin Duffy, LLP, New York State DOS ID #: 3049913,  Kevin T. Coughlin, Esq., New York State Attorney Registration Number: [1698885] ("Defendant") is upon information and belief, the owner, chairman, chief executive officer and/or overseer of operations within the Corporate Defendant. He is personally liable herein under applicable law(s) permitting personal liability because he exercised control and supervision over Plaintiff, was aware of his protected rights under the laws asserted herein and is responsible for overseeing payroll matters and for complying with federal and state wage laws.

47.     Defendant Law offices of Coughlin Duffy , a Professional Corporation, d/b/a Coughlin Duffy, LLP, New York State DOS ID #: 3049913,  Timothy I. Duffy, Esq., New York State Attorney Registration Number: [None] ("Defendant") is upon information and belief, the owner, chairman, chief executive officer and/or overseer of operations within the Corporate Defendant. He is personally liable herein under applicable law(s) permitting personal liability because he exercised control and supervision over Plaintiff, was aware of his protected rights under the laws asserted herein and is responsible for overseeing payroll matters and for complying with federal and state wage laws.

48.     Defendants are hereinafter sometimes collectively referred to as the "Individual
Defendants."

49.     At all times relevant herein, Defendants acted by and through their agents,
servants, and employees, each of whom acted at all times relevant herein in the course
and scope of their employment with and for the Corporate Defendant.


VII.   **BREIF HISTORY OF JOSHUA LAWRENCE WEINER ESQ. SCHEME
AND RUSE TO COMMIT FRAUD IN THE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

50.     Opposing Counsel Joshua Lawrence Weiner Esq., who works with his father Paul
Ivan Weiner Esq. in a small New Jersey boutique law firm known as Paul I. Weiner,
Esquire, LLC a/k/a the Law offices of Weiner & Weiner, P.C., own by his father since
January 1982 – Present 37 years 7 months, together in 2018 concocted a scheme of deceit
with other partnering law firms the Co-Defendants to conceal the Weiner's Law Firm
from Southern District of New York and the Plaintiff because the pair are New Jersey
Attorneys who do not have an office in the State of New York, they only one in the State
of New Jersey, so the Defendants came up with a plan to use their clients firm Budd
Larsen, P.C., to appear on the case thereafter took the six months to join, combined, and
later merge their small concealed business boutique operation Paul I. Weiner, Esquire,
LLC a/k/a the Law offices of Weiner & Weiner, P.C., with Couglin Duffy, LLP.

51.     The father and son pair had no office of operations in the State of New York for
38 years, which makes them ineligible to practice law in the State of New York and if
they had secured litigation or practice law that would be a violation of New York State

Judiciary Law § 470, for out of State attorneys who must have an office in the State of New York to practice litigation, on November 19, 2018 when Weiner executed and submitted his clients Motion to Vacate Defendants Default Judgment he was not an employee or partner of Budd Larsen Law, LLP he alleged to be a chairperson who worked for the New Jersey office, he did not work at the New York City office, he was always employed at Paul I. Weiner, LLC a/k/a the Law offices of Weiner & Weiner Employment & Labor Law Attorneys which merged with Couglin Duffy, LLP in May 2019. All named Defendants violated NJ Laws and New York State Laws by concealing the true status and residency of co-Defendants Joshua Lawrence Weiner and Paul I. Weiner Esq., lawyers residing and working full time in the State of New Jersey, while trying and attempting to clean up their fraud and deceit by merging with Couglin Duffy, LLP in May 2019 with Joshua Weiner changing his employment status to partner while he still maintains his employment with Esquire, LLP based in Short Hills, New Jersey is where he has always been was nothing but a ruse to cover up his illegal activity in breaking New York State law. On May 23, 2019 before Judge Wang counsel Weiner had no business appearing before the Court the reason he was not registered as a New York State Licensed Attorney with Couglin Duffy, LLP in May 2019 which effects his appearance and admissions status in the District Courts for the Southern District of New York, if the attorney is not registered in the State of New York he has no active admissions in Federal Court.

52.     As a result of Defendants violations Plaintiff is owed $ 25,000,000.00 in damages.

## COUNT I

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §487

### [Misconduct by attorneys]

53.     Judiciary Law § 487(1) provides, among other things, that an attorney who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . forfeits to the party injured treble damages, to be recovered in a civil action." A plaintiff may bring an action to recover damages for attorney deceit regardless of whether the attorney's deceit was successful (*Amalfitano v. Rosenberg*, 12 NY3d 8 [2009]). Further, the plaintiff in a section 487 case may recover the legal expenses incurred as a proximate result of a material misrepresentation in a prior action (see Pomerance v McGrath, 124 AD3d 481, 485 [1st Dept. 2015], *lv dismissed* 25 NY3d 1038 [2015]).

## COUNT II

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §468-A

### [Biennial registration of attorneys]

54.     Violations of New York Judiciary Law § 468-A Biennial registration of attorneys Judiciary (JUD) 1. Every attorney and counselor-at-law admitted to practice in this state on or before January first, nineteen hundred eighty-two, whether resident or nonresident, shall file a biennial registration statement with the administrative office of the courts on or before March first, nineteen hundred eighty-two in such form as the chief administrator of the courts shall prescribe. An attorney who is admitted to practice after January first, nineteen hundred eighty-two and on or before January first, nineteen

hundred eighty-six, shall file a registration statement within sixty days after the date of admission. An attorney who is admitted to practice after January first, nineteen hundred eighty-six shall file a registration statement prior to taking the constitutional oath of office. (See, Matter of Horoshko, 218 A.D.2d 339, 341, 638 N.Y.S.2d 445). By orders entered April 24, 1997 (230 A.D.2d 366, 657 N.Y.S.2d 133) and February 3, 1998 (240 A.D.2d 106, 676 N.Y.S.2d 1),

## COUNT III

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §470

**[Attorneys having offices in this state may reside in adjoining state]**

55.         Violations of New York Judiciary Law § 470 Judiciary (JUD), Attorneys having offices in this state may reside in adjoining state, Attorneys having offices in this state may reside in adjoining state. A person, regularly admitted to practice as an attorney and counselor, in the courts of record of this state, whose office for the transaction of law business is within the state, may practice as such attorney or counselor, although he resides in an adjoining state. (See, Arrowhead Capital Finance v. Cheyne Specialty Finance Fund, 154 A.D.3d 523 (1st Dep't 2017) (See, Schoenefeld v. State, 25 N.Y.3d 22 (2015). In Marina District Dev. Co. v. Taledano, 60 Misc.3d 1203A (NOR) (Sup. Ct., New York Co. June 18, 2018), in Law Office of Angela Barker v. Broxton, ____ Misc.3d ____, 2018 Slip Op.2816 (App. Term 1st Dep't June 11, 2018).

## COUNT IV

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §476

**[Action against attorney for lending his name in suits and against person using name]**

56.     Violations of New York Judiciary Law § 476, Action against attorney for lending his name in suits and against person using name Judiciary (JUD) Action against attorney for lending his name in suits and against person using name. If an attorney knowingly permits a person not being his general law partner, or a clerk in his office, to sue out a mandate, or to prosecute or defend an action in his name, he, and the person who so uses his name, each forfeits to the party against whom the mandate has been sued out, or the action prosecuted or defended, the sum of fifty dollars, to be recovered in an action.

## COUNT V

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §476-A

**[Action for unlawful practice of the law]**

57.     Violations of New York Judiciary Law § 476-A, Action for unlawful practice of the law Judiciary (JUD), 1. The attorney-general may maintain an action upon his or her own information or upon the complaint of a private person or of a bar association organized and existing under the laws of this state against any person, partnership, corporation, or association, and any employee, agent, director, or officer thereof who commits any act or engages in any conduct prohibited by law as constituting the unlawful practice of the law. The term "action" as used in this subdivision shall be construed to include both civil actions and criminal actions.

The term "unlawful practice of the law" as used in this article shall include, but is not limited to,

(a) any act prohibited by penal law sections two hundred seventy, two hundred seventy-a, two hundred seventy-e, two hundred seventy-one, two hundred seventy-five, two hundred seventy-five-a, two hundred seventy-six, two hundred eighty or fourteen hundred fifty-two, or

(b) any other act forbidden by law to be done by any person not regularly licensed and admitted to practice law in this state, or

(c) any act punishable by the supreme court as a criminal contempt of court under section seven hundred fifty-B of this chapter.

2.      Such a civil action may also be maintained by a bar association organized and existing under the laws of the state of New York, upon an application to the supreme court of the state of New York, or a justice thereof, for leave to bring the same by such bar association on good cause shown therefor and proof that a written request was made upon the attorney-general to bring such an action and that more than twenty days have elapsed since the making of such request and he or she has failed or refused to bring such an action.

## COUNT VI

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §476-B

### [Injunction to restrain defendant from unlawful practice of the law]

58.      Violations of New York Judiciary Law § 476-B, Injunction to restrain defendant from unlawful practice of the law Judiciary (JUD), Injunction to restrain defendant from unlawful practice of the law. In a civil action brought as prescribed in section four

hundred seventy-six-a of this article, the final judgment in favor of the plaintiff shall perpetually restrain the defendant from the commission or continuance of the act complained of. A temporary restraining order to restrain the commission or continuance thereof may be granted upon proof, by affidavit, that the defendant has violated any of the provisions of such section. The provisions of statute or rule relating generally to injunctions as provisional remedies in actions apply to such a temporary restraining order and the proceedings thereupon, except that the plaintiff shall not be required to file any undertaking before the issuance of such temporary restraining order, shall not be liable for costs and shall not be liable for damages sustained by reason of the restraining order in cases where judgment is rendered in favor of the person, firm or corporation sought to be enjoined. (See, New York Crim. and Civil Courts Bar v. Jacoby 92 A.D.2d 817 (N.Y. App. Div. 1983).

## COUNT VII

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §478

### [Practicing or appearing as attorney-at-law without being admitted and registered]

59.     Violations of New York Judiciary Law § 478, Practicing or appearing as attorney-at-law without being admitted and registered Judiciary (JUD), Practicing or appearing as attorney-at-law without being admitted and registered. It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself or herself in a court of record in this state, or to furnish attorneys or counsel or an attorney and counsel to render legal services, or to hold himself or herself out to the public as being entitled to practice law as aforesaid, or in any other manner, or to assume to be an attorney or counselor-at-law, or to assume, use, or

advertise the title of lawyer, or attorney and counselor-at-law, or attorney-at-law or counselor-at-law, or attorney, or counselor, or attorney and counselor, or equivalent terms in any language, in such manner as to convey the impression that he or she is a legal practitioner of law or in any manner to advertise that he or she either alone or together with any other persons or person has, owns, conducts or maintains a law office or law and collection office, or office of any kind for the practice of law, without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state, and without having taken the constitutional oath. Provided, however, that nothing in this section shall be held to apply (1) to officers of societies for the prevention of cruelty to animals, duly appointed, when exercising the special powers conferred upon such corporations under section fourteen hundred three of the not-for-profit corporation law; or (2) to law students who have completed at least two semesters of law school or persons who have graduated from a law school, who have taken the examination for admittance to practice law in the courts of record in the state immediately available after graduation from law school, or the examination immediately available after being notified by the board of law examiners that they failed to pass said exam, and who have not been notified by the board of law examiners that they have failed to pass two such examinations, acting under the supervision of a legal aid organization when such students and persons are acting under a program approved by the appellate division of the supreme court of the department in which the principal office of such organization is located and specifying the extent to which such students and persons may engage in activities otherwise prohibited by this statute; or (3) to law students who have completed at least two semesters of law school, or to persons who have graduated from a law school

approved pursuant to the rules of the court of appeals for the admission of attorneys and counselors-at-law and who have taken the examination for admission to practice as an attorney and counselor-at-law immediately available after graduation from law school or the examination immediately available after being notified by the board of law examiners that they failed to pass said exam, and who have not been notified by the board of law examiners that they have failed to pass two such examinations, when such students or persons are acting under the supervision of the state or a subdivision thereof or of any officer or agency of the state or a subdivision thereof, pursuant to a program approved by the appellate division of the supreme court of the department within which such activities are taking place and specifying the extent to which they may engage in activities otherwise prohibited by this statute and those powers of the supervising governmental entity or officer in connection with which they may engage in such activities; or (4) an attorney and counselor-at-law or the equivalent who is admitted to the bar in another state, territory, district or foreign country and who has been admitted to practice pro hac vice in the state of New York within the limitations prescribed in the rules of the court of appeals; or (5) an attorney licensed as a legal consultant under rules adopted by the court of appeals pursuant to subdivision six of section fifty-three of this chapter and rendering legal services in the state within limitations prescribed in such rules.

## COUNT VIII

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §483

### [Signs advertising services as attorney at law]

60.      Violations of New York Judiciary Law § 483, Signs advertising services as

attorney at law, Judiciary (JUD), It shall be unlawful for any person to maintain on real

property or to permit or allow any other person to maintain, on such property a sign, in

any language, to the effect that an attorney-at-law or legal services are available therein

unless the full name of the attorney-at-law or the firm rendering such services is set forth

thereon. In any prosecution for violation of the provisions of this section the existence of

such a sign on real property shall be presumptive evidence that it was placed or permitted

to exist thereon with the knowledge and consent of the person or persons in possession of

said premises.

## COUNT IX

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §484

### [None but attorneys to practice in the state]

61.      Violations of New York Judiciary Law § 484, None but attorneys to practice in

the state, Judiciary (JUD), No natural person shall ask or receive, directly or indirectly,

compensation for appearing for a person other than himself as attorney in any court or

before any magistrate, or for preparing deeds, mortgages, assignments, discharges, leases

or any other instruments affecting real estate, wills, codicils, or any other instrument

affecting the disposition of property after death, or decedents' estates, or pleadings of any

kind in any action brought before any court of record in this state, or make it a business to

practice for another as an attorney in any court or before any magistrate unless he has

been regularly admitted to practice, as an attorney or counselor, in the courts of record in

the state; but nothing in this section shall apply (1) to officers of societies for the

prevention of cruelty to animals, duly appointed, when exercising the special powers

conferred upon such corporations under section fourteen hundred three of the not-for-

profit corporation law; or (2) to law students who have completed at least two semesters

of law school or persons who have graduated from a law school, who have taken the

examination for admittance to practice law in the courts of record in the state

immediately available after graduation from law school, or the examination immediately

available after being notified by the board of law examiners that they failed to pass said

exam, and who have not been notified by the board of law examiners that they have

failed to pass two such examinations, acting under the supervision of a legal aid

organization, when such students and persons are acting under a program approved by the

appellate division of the supreme court of the department in which the principal office of

such organization is located and specifying the extent to which such students and persons

may engage in activities prohibited by this statute; or (3) to persons who have graduated

from a law school approved pursuant to the rules of the court of appeals for the admission

of attorneys and counselors-at-law and who have taken the examination for admission to

practice as an attorney and counselor-at-law immediately available after graduation from

law school or the examination immediately available after being notified by the board of

law examiners that they failed to pass said exam, and who have not been notified by the

board of law examiners that they have failed to pass two such examinations, when such

persons are acting under the supervision of the state or a subdivision thereof or of any

officer or agency of the state or a subdivision thereof, pursuant to a program approved by the appellate division of the supreme court of the department within which such activities are taking place and specifying the extent to which they may engage in activities otherwise prohibited by this statute and those powers of the supervising governmental entity or officer in connection with which they may engage in such activities; or (4) an attorney and counselor-at-law or the equivalent who is admitted to the bar in another state, territory, district or foreign country and who has been admitted to practice *Pro Hac Vice* in the State of New York within the limitations prescribed in the rules of the court of appeals; or (5) an attorney licensed as a legal consultant under rules adopted by the court of appeals pursuant to subdivision six of section fifty-three of this chapter and rendering legal services in the state within limitations prescribed in such rules.


## COUNT X

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §485

### [Violation of certain preceding sections a misdemeanor]

62.     Violations of New York Judiciary Law § 485, Violation of certain preceding sections a misdemeanor, Judiciary (JUD), Except as provided in section four hundred eighty-five-a of this article, any person violating the provisions of section four hundred seventy-eight, four hundred seventy-nine, four hundred eighty, four hundred eighty-one, four hundred eighty-two, four hundred eighty-three or four hundred eighty-four of this article, shall be guilty of a misdemeanor.

## COUNT XI

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §485-A

### [Violation of certain sections a class E felony]

63.       Violations of New York Judiciary Law § 485-A, **Violation of certain sections a class E felony**, Judiciary (JUD), Any person who violates the provisions of sections four hundred seventy-eight, four hundred eighty-four, four hundred eighty-six or four hundred ninety-five of this article is guilty of a class E felony when he or she: (1) falsely holds himself or herself out as a person licensed to practice law in this state, a person otherwise permitted to practice law in this state, or a person who can provide services that only attorneys are authorized to provide; and (2) causes another person to suffer monetary loss or damages exceeding one thousand dollars or other material damage resulting from impairment of a legal right to which he or she is entitled.

## COUNT XII

## VIOLATION OF NEW YORK STATE JUDICIARY LAW §495

### [Corporations and voluntary associations not to practice law]

64.       Violations of New York Judiciary Law § 495, Corporations and voluntary associations not to practice law, Judiciary (JUD),

1. No corporation or voluntary association shall

(a) practice or appear as an attorney-at-law for any person in any court in this state or before any judicial body, nor

(b) make it a business to practice as an attorney-at-law, for any person, in any of said courts, nor

(c) hold itself out to the public as being entitled to practice law, or to render legal services or advice, nor

(d) furnish attorneys or counsel, nor

(e) render legal services of any kind in actions or proceedings of any nature or in any other way or manner, nor

(f) assume in any other manner to be entitled to practice law, nor

(g) assume, use or advertise the title of lawyer or attorney, attorney-at-law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law or to furnish legal advice, services or counsel, nor

(h) advertise that either alone or together with or by or through any person whether or not a duly and regularly admitted attorney-at-law, it has, owns, conducts or maintains a law office or an office for the practice of law, or for furnishing legal advice, services or counsel.

2. No corporation or voluntary association shall itself or by or through its officers, agents or employees, solicit any claim or demand, or taken an assignment thereof, for the purpose of representing any person in the pursuit of any civil remedy, nor solicit any claim or demand for the purpose of representing as attorney-at-law, or of furnishing legal advice, services or counsel to, a person sued or about to be sued in any action or proceeding or against whom an action or proceeding has been or is about to be brought, or who may be affected by any action or proceeding which has been or may be instituted in any court or before any judicial body.

Nothing herein contained shall affect any assignment heretofore or hereafter taken by any moneyed corporation authorized to do business in the state of New York or its nominee pursuant to a subrogation agreement or a salvage operation. Any corporation or voluntary association violating the provisions of this subdivision or of subdivision one of this section shall be liable to a fine of not more than five thousand dollars and every officer, trustee, director, agent or employee of such corporation or voluntary association who directly or indirectly engages in any of the acts prohibited in this subdivision or in subdivision one of this section or assists such corporation or voluntary association to do such prohibited acts is guilty of a misdemeanor.

The fact that such officer, trustee, director, agent or employee shall be a duly and regularly admitted attorney-at-law, shall not be held to permit or allow any such corporation or voluntary association to do the acts so prohibited nor shall such fact be a defense upon the trial of any of the persons mentioned herein for a violation of the provisions of this subdivision or subdivision one of this section.

3. No voluntary association or corporation shall ask or receive directly or indirectly, compensation for preparing deeds, mortgages, assignments, discharges, leases, or any other instruments affecting real estate, wills, codicils, or any other instruments affecting disposition of property after death or decedents' estates, or pleadings of any kind in actions or proceedings of any nature. Any association or corporation violating the provisions of this subdivision is guilty of a misdemeanor unless otherwise provided by section four hundred eighty-five-a of this article.

4. Subdivisions one and two of this section shall not apply to any corporation or voluntary association lawfully engaged in a business authorized by the provisions of any existing statute.

5. This section shall not apply to a corporation or voluntary association lawfully engaged in the examination and insuring of titles to real property, in the preparation of any deeds, mortgages, assignments, discharges, leases or any other instruments affecting real property insofar as such instruments are necessary to the examination and insuring of titles, and necessary or incidental to loans made by any such corporation or association; nor shall it prohibit a corporation or voluntary association from employing an attorney or attorneys in and about its own immediate affairs or in any litigation to which it is or may be a party.

Nothing herein contained shall be construed to prevent a corporation or association from furnishing to any person, lawfully engaged in the practice of law, such information or such clerical services in and about his professional work as, except for the provisions of this section, may be lawful, provided that at all times the lawyer receiving such information or such services shall maintain full professional and direct responsibility to his clients for the information and services so received. But no corporation shall be permitted to render any services which cannot lawfully be rendered by a person not admitted to practice law in this state nor to solicit directly or indirectly professional employment for a lawyer.

6. This section shall not apply to a corporation organized under article fifteen, or authorized to do business in this state under article fifteen-A, of the business corporation law.

7. This section does not apply to organizations which offer prepaid legal services; to non-profit organizations whether incorporated or unincorporated, organized and operating primarily for a purpose other than the provision of legal services and which furnish legal services as an incidental activity in furtherance of their primary purpose; or to organizations which have as their primary purpose the furnishing of legal services to indigent persons.

## COUNT XIII

### Violations of 2011 US Code Title 18

### [Crimes and Criminal Procedure Part I - CRIMES (§§ 1 - 2725)]

65.      Violations of 2011 US Code Title 18 - Crimes and Criminal Procedure Part I - CRIMES (§§ 1 - 2725); Defendants used their companies website to violate Federal and State laws, and the District Courts E.C.F system to execute false submissions designed to cause deceit within the United States District Court for the SDNY and EDNY and against the Plaintiff.

## COUNT XIV

### Violations of 18 USC §

### [Chapter 63 - MAIL FRAUD AND OTHER FRAUD OFFENSES (§§ 1341 - 1351)]

66.      Violations of 2011 US Code Title 18 - Crimes and Criminal Procedure Part I - CRIMES (§§ 1 - 2725) Chapter 63 - MAIL FRAUD AND OTHER FRAUD OFFENSES (§§ 1341 - 1351), Defendants used their companies website to violate Federal and State laws, and the District Courts E.C.F system to execute false submissions

designed to cause deceit within the United States District Court for the SDNY and EDNY and against the Plaintiff.

## COUNT XV

### VIOLATION OF Advertising and procure divorces STATUES SECTIONS 337 of New York's General Business Law

67.       Whoever prints, publishes, distributes or circulates, or causes to be printed, published, distributed or circulated any circular, pamphlet, card, hand bill, advertisement, printed paper, book, newspaper or notice of any kind offering to advise on laws of any foreign state, nation or jurisdiction for the express purpose of procuring or aiding in procuring any divorce, severance, dissolution, or annulment or  1 any marriage, or offering to procure or to aid in procuring any divorce, or the severance, dissolution, or annulment of any marriage, or offering to engage, appear or act as attorney or counsel in any suit for alimony or divorce or the severance, dissolution or annulment of any marriage, either in this state or elsewhere, is guilty of a misdemeanor.   This section shall not apply to the printing or publishing of any notice or advertisement required or authorized by any law of this state.

## COUNT XVI

### VIOLATION OF CONSUMER FRAUD STATUES SECTIONS 349 of New York's General Business Law

68.       Violations of Consumer Fraud Statues Section 349 of New York's General Business Law;

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

(b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules.

(c) Before any violation of this section is sought to be enjoined, the attorney general shall be required to give the person against whom such proceeding is contemplated notice by certified mail and an opportunity to show in writing within five business days after receipt of notice why proceedings should not be instituted against him, unless the attorney general shall find, in any case in which he seeks preliminary relief, that to give such notice and opportunity is not in the public interest.

(d) In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

(e) Nothing in this section shall apply to any television or radio broadcasting station or to any publisher or printer of a newspaper, magazine or other form of printed advertising, who broadcasts, publishes, or prints the advertisement.

(f) In connection with any proposed proceeding under this section, the attorney general is authorized to take proof and make a determination of the relevant facts, and to issue subpoenas in accordance with the civil practice law and rules.

(g) This section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state, and shall not supersede, amend or repeal any other law of this state under which the attorney general is authorized to take any action or conduct any inquiry.

(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

(j) Notwithstanding any law to the contrary, all monies recovered or obtained under this article by a state agency or state official or employee acting in their official capacity shall be subject to subdivision eleven of section four of the state finance law.

## COUNT XVII

## VIOLATIONS OF 18 USC § 1343 (2011)

### [§1343, Fraud by wire, radio, or television]

69.       Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses,

representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. (Added July 16, 1952, ch. 879, §18(a), 66 Stat. 722; amended July 11, 1956, ch. 561, 70 Stat. 523; Pub. L. 101–73, title IX, §961(j), Aug. 9, 1989, 103 Stat. 500; Pub. L. 101–647, title XXV, §2504(i), Nov. 29, 1990, 104 Stat. 4861; Pub. L. 103–322, title XXXIII, §330016(1)(H), Sept. 13, 1994, 108 Stat. 2147; Pub. L. 107–204, title IX, §903(b), July 30, 2002, 116 Stat. 805; Pub. L. 110–179, §3, Jan. 7, 2008, 121 Stat. 2557.)

## COUNT XVIII

### VIOLATIONS OF YORK STATE General Business Section 350 False advertising unlawful

70.    Violations of New York State General Business Section 350, false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

## COUNT XIX

## VIOLATION OF NEW YORK STATE LAW Rules of the Chief Administrative Judge Section 118.1 Filing requirement

71.     Section 118.1 Filing requirement:

(a) Every attorney admitted to practice in New York State on or before January 1, 1982, whether resident or nonresident, and whether or not in good standing, shall file a registration statement with the Chief Administrator of the Courts no later than March 1, 1982, and during each alternate year thereafter, within 30 days after the attorney's birthday, for as long as the attorney remains duly admitted to the New York bar.

(b) Every attorney admitted to practice in New York State after January 1, 1982, and on or before January 1, 1986, whether resident or nonresident, and whether or not in good standing, shall file a registration statement within 60 days of the date of such admission, and during each alternate year thereafter, within 30 days after the attorney's birthday, for as long as the attorney remains duly admitted to the New York bar.

(c) Every attorney admitted to practice in New York State after January 1, 1986, whether resident or nonresident, and whether or not in good standing, shall file a registration statement prior to taking the constitutional oath of office, and during each alternate year thereafter, within 30 days after the attorney's birthday, for as long as the attorney remains duly admitted to the New York bar.

(d) The registration statement shall be filed in person at the Office of Court Administration, 25 Beaver Street, 8th Floor, in the City of New York, or by means of an

online program implemented by the Chief Administrator, or by ordinary mail addressed

to:

> State of New York
> Office of Court Administration
> General Post Office
> P.O. Box 29327
> New York, NY 10087-9327

The report of pro bono services and charitable contributions described in section

118.1(e)(14) shall be filed in the manner directed by the Chief Administrator of the

Courts.

The report of pro bono services and charitable contributions described in section 118.1(e)(14) shall be filed in the manner directed by the Chief Administrator of the Courts.

(e) The registration statement shall be on a form provided by the Chief Administrator and shall include the following information, attested to by affirmation:

(1) name of attorney;

(2) date of birth;

(3) name when admitted to the bar;

(4) law school from which degree granted;

(5) year admitted to the bar;

(6) judicial department of admission to the bar;

(7) office addresses (including department);

(8) home address;

(9) business telephone number,

(10) social security number;

(11) e-mail address(optional);

(12) race, gender, ethnicity and employment category (optional);

(13) compliance with child support obligations;

(14) in a separate statement, filed anonymously in a manner directed by the Chief Administrator, (a) a mandatory report of pro bono services and contributions, as defined in Rule 6.1 of the attorney Rules of Professional Conduct, performed or contributed by the attorney in the previous two calendar years, and (b) a report of such other pro bono service and contributions over the same period as the attorney may choose to describe.

(f) In the event of a change in the name of attorney, office addresses, home address, business telephone number, or e-mail address reported pursuant to subdivision (e) of this section, the attorney shall file an amended statement within 30 days of such change.

(g) Each registration statement filed pursuant to this section shall be accompanied by a registration fee of $375. No fee shall be required from an attorney who certifies that he or she has retired from the practice of law. For purposes of this section, the "practice of law" shall mean the giving of legal advice or counsel to, or providing legal representation for, particular body or individual in a particular situation in either the public or private sector in the State of New York or elsewhere, it shall include the appearance as an attorney before any court or administrative agency. An attorney is "retired" from the practice of law when, other than the performance of legal services without compensation, he or she does not practice law in any respect and does not intend ever to engage in acts that constitute the practice of law. For purposes of section 468-a of the Judiciary Law, a full-time judge or justice of the Unified Court System of the State of New York or of a court of any other state or of a federal court, shall be deemed "retired" from the practice of law. An attorney in good standing, at least 55 years old and with at least 10 years'

experience, who participates without compensation in an approved pro bono legal services program, may enroll as an "attorney emeritus."

(h) Failure by any attorney to comply with the provisions of this section shall result in referral for disciplinary action by the Appellate Division of the Supreme Court pursuant to section 90 of the Judiciary Law.

## COUNT XX

### VIOLATION OF NEW YORK STATE LAW Rules of the Chief Administrative Judge Section 118.2 Public access to attorney registration information

72. Section 118.2 Public access to attorney registration information

(a) Except as otherwise provided in this section, the information contained in the registration statement filed pursuant to section 118.1 of this Part shall be made available to the public upon submission of a written request and the payment of a charge for production, pursuant to the following schedule:

(1) Information for individual registered attorney by name:

(i) no charge for single inquiry;

(ii) $2.50 for each additional name.

(2) Names and business addresses of registered attorneys by geographical area:

(i) $25.00 for 100 or fewer names;

(ii) $1.00 for each additional 100 names;

(iii) $100.00 for list of all registered attorneys.

Other requests may entail additional fees as circumstances warrant. Fees may be waived for requests by government agencies. Written requests for information shall be made to the Attorney Registration Unit, Office of Court Administration, 25 Beaver Street, New York, NY 10004.

(b)

(1) The home address of an attorney shall be made available to the public only in the following circumstances:

(i) where no office is listed, the home address will be made public;

(ii) where an office address is listed, but a request for information alleges that the attorney cannot be located at that address, the home address will be made public only if the Chief Administrator determines, by independent inquiry, that the attorney cannot be located at the listed office address.

(2) The date of birth, social security number, race, gender, ethnicity and employment category of the attorney shall not be made available to the public.

(c) All information relating to a particular attorney will be provided to that attorney or, on the attorney's written request, to any person or agency.

(d) All information, other than anonymous pro bono data, will be available at all times to the attorney grievance committees of the Appellate Divisions.

(e) Upon a showing of good cause in individual cases, a Presiding Justice of the Appellate Division may direct the non-disclosure of information otherwise available pursuant to this section.

## COUNT XX

### VIOLATION OF NEW YORK STATE LAW Rules of the Chief Administrative Judge Section 118.3 Filing requirement

**[Registration of In-House Counsel and Foreign Legal Consultants]**

73. Registration of In-House Counsel and Foreign Legal Consultants

**Section 118.3 Filing requirement**

(a) Every in-house counsel and every foreign legal consultant approved by an Appellate Division

for registration in New York State shall file an initial registration statement with the Chief

Administrator of the Courts within 30 days of the date of receipt notice of such approval, or at

such other time as the Chief Administrator may direct. During each alternate year thereafter,

each such registrant shall file a subsequent registration statement within 30 days after the

registrant's birthday, for as long as the registrant remains eligible for registration pursuant to the Rules of the Court of Appeals.

(b) The initial registration statement shall be filed by ordinary mail addressed to:

State of New York

Office of Court Administration

General Post Office

P.O. Box 29327

New York, NY 10087-9327

Subsequent registration statements shall be filed by an online program established for that purpose.

(c) The registration statement shall be on a form provided by the Chief Administrator and shall include the following information, attested to by affirmation:

(1) name of the registrant;

(2) date of birth;

(3) name when first registered;

(4) law school from which degree granted;

(5) year of initial registration;

(6) judicial department of registration;

(7) office addresses (including department);

(8) home address;

(9) business telephone number,

(10) social security number;

(11) e-mail address;

(12) race, gender, ethnicity and employment category (optional);

(13) compliance with child support obligations; and

(14) if registering as a foreign legal consultant, the name of the foreign country of his or her admission to practice.

(d) In the event of a change in any of the information required to be provided pursuant to subdivision (c) of this section, the registrant shall file an amended statement within 30 days of such change.

(e) Failure by any in-house counsel or foreign legal consultant to comply with the provisions of this section shall result in termination of the registrant's status as foreign legal consultant or in-house counsel pursuant to Part 521 or Part 522 of the Rules of the Court of Appeals, as well as disciplinary action by the Appellate Division of the Supreme Court.

## COUNT XXI

### VIOLATION OF NEW YORK STATE LAW Rules of the Chief Administrative Judge Section 118.4 Public access to registration information

74. Section 118.4 Public access to registration information

(a) Except as otherwise provided in this section, the information contained in the registration statement filed pursuant to section 118.3 of this Part shall be made available to the public upon submission of a written request and the payment of a charge for production, pursuant to the following schedule:

(1) Information for individual registrants by name:

(i) no charge for single inquiry;

(ii) $2.50 for each additional name.

(2) Names and business addresses of registrants by geographical area:

(i) $25.00 for 100 or fewer names;

(ii) $1.00 for each additional 100 names;

(iii) $100.00 for list of all registrants. Other requests may entail additional fees as circumstances warrant. Fees may be waived for requests by government agencies. Written requests for information shall be made to the Attorney Registration Unit, Office of Court Administration, 25 Beaver Street, New York, NY 10004.

(b)

(1) The home address of a registrant shall be made available to the public only in the following circumstances:

(i) where no office is listed, the home address will be made public;

(ii) where an office address is listed, but a request for information alleges that the registrant cannot be located at that address, the home address will be made public only if the Chief Administrator determines, by independent inquiry, that the registrant cannot be located at the listed office address.

(2) The date of birth, social security number, race, gender, ethnicity and employment category of the registrant shall not be made available to the public.

(c) All information relating to a particular registrant will be provided to that registrant or, on the registrant's written request, to any person or agency.

(d) All information will be available at all times to the attorney grievance committees of the Appellate Divisions.

75.     Plaintiff pleads that Defendants was "guilty of deceit and collusion" or "consent[ed] to deceit or collusion," in either case "with intent to deceive the court or any party." and based thereon will assert a violation of §487(1).

The statute's provision for treble damages ensures that New York plaintiffs will maintain a lively interest in this cause of action. But the circumstances under which plaintiffs can take advantage of such a claim have been unclear, because the statute is short and its wording is open-ended, leaving much interpretive work for the courts.

Section 487, which provides both civil and criminal causes of action, reads:

An attorney or counselor who:

1.  Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

2.  Willfully delays his client's suit with a view to his own gain; or, willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

76.     The deceit was not only willful it was directed at the Court and it was used with

intent to overturn District Judge George B. Daniels July 30, 2018 decision and order that

was awarded to the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

    a)  An award $25,000,000.00
    b)  An award Punitive damages,
    c)  An award Compensatory damages,
    d)  An award of attorney's fees or Pro Se cost,
    e)  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: Queens, New York
        July 30, 2019

                                        Respectfully submitted,

                                        RICHARD FARMER, Plaintiff
                                        Appearing *Pro Se*
                                        __/S/_Richard Farmer_____
                                        By: Richard Farmer
                                        136-20 38th Ave, #3D
                                        Flushing, NY 11354
                                        (347) 933-9685

LAW OFFICES WEINER & WEINER, LLC,
PAUL I. WEINER, ESQUIRE, LLC,
C/O:   Paul Ivan Weiner, Esq.,
       New York State Attorney Registration Number: [1648161]
       Joshua Lawrence Weiner Esq.,
       New York State Attorney Registration Number: [4510509]
       60 Washington St #101g,
       Morristown, NJ 07960
       Tel: 973-455-0026
       Fax: 973-455-0026
       Email:  piw@weinerattorney.com
       Email: jlw@weinerattorney.com

       *Defendants*

BUDD LARNER, A PROFESSIONAL CORP.,
D/b/a BUDD LARNER, P.C.,
C/O:   Henry A. Larner, ESQ., C.E.O,
        Mark D. Larner, ESQ., C.E.O,
        Mitchell Rait, Esq., & C.E.O,
        Susan Reach Winters, ESQ., C.E.O,
        Peter John Frazza, ESQ., C.E.O,
        260 Madison Avenue
        18th Floor
        New York, NY 10016
        Phone: 212-455-0436

        E-mail:mrait@buddlarner.com

        *Defendants*

BUDD LARNER, P.C.
C/O:   Mitchell Rait, Esq.
        New York State Attorney Registration Number: [2172062]
        Chief Operating Officer
        150 John F. Kennedy Parkway
        Short Hills, NJ 07078-2703
        Tel: 973-379-4800
        Direct dial: 973-315-4515
        Fax 973-379-7734

        E-mail: mrait@buddlarner.com

        *Defendants*

LAW OFFICES OF COUGHLIN DUFFY, LLP,
C/O:   Kevin T. Coughlin, ESQ., [1698885] and,
        Timothy I. Duffy, ESQ.,
        New York State Attorney Registration Number: [1698885]
        88 Pine Street, 28th floor
        Wall Street Plaza
        New York, NY 10005
        Phone (212) 483-0105
        Fax (212) 480-3899

        E-mail: kcoughlin@coughlinduffy.com
        E-mail: tduffy@coughlinduffy.com

        *Defendants*

# EXHIBIT

# "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD FARMER | CIVIL ACTION NO.:<br>1:17-CV-09300-GBD-OTW |
| Plaintiff, | |
| v. | RETURN DATE: DECEMBER 11, 2018 |
| FZOAD.COM ENTERPRISES, INC., d/b/a<br>MANHATTAN EYEWORKS, d/b/a<br>CHELSEA VISION ASSOCIATES,<br>DENTAL ASSOCIATES OF NEW YORK<br>LLP, GREENWALD & MATANI PTR,<br>DAVID FOREST GROSS, MUNKUND J.<br>MATANI, and GARY GREENWALD,<br><br>Defendants. | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**
**VACATE THE JULY 30, 2018 DEFAULT JUDGMENT PURSUANT TO**
**FED.R.CIV.P 55(C)**

---

**BUDD LARNER, P.C.**
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
Tel:   (973) 379-4800
Fax:   (973) 379-7734
Attorneys for Defendants

Of counsel and on the brief:
        Joshua L. Weiner, Esq.

TABLE OF CONTENTS

Page

FACTUAL BACKGROUND.................................................................................1

LEGAL ARGUMENT....................................................................................2

CONCLUSION.........................................................................................4

i

**Cases**

Davis v. Musler,

    713 F.2d 907, 916 (2d Cir. 1983) ................................................................... 3

Enron Oil Corp. v. Diakuhara,

    10 F.3d 69, 90, 96 (2d Cir. 1993) ................................................................. 2

Meehan v. Snow,

    652 F.2d 274, 276 (2d Cir. 1981) ................................................................. 2

**Rules**

Fed.R.Civ.P 55(c) ...................................................................................... 2

Fed.R.Civ.P. 4(m) ...................................................................................... 3

**Act**

Age Discrimination in Employment Act ("ADEA") ................................................ 1, 4

Americans with Disabilities Act ("ADA") ........................................................ 1, 4

Fair Labor Standards Act ("FLSA"). ............................................................. 1, 4

New York Labor Law ("NYLL") ................................................................... 1, 4

Title VII of the Civil Rights Act of 1964 ("Title VII") ......................................... 1, 4

## FACTUAL BACKGROUND

Plaintiff's Complaint alleges that, as an employee of defendants FZOAD.com Enterprises, Inc. d/b/a Manhattan Eyeworks d/b/a Chelsea Vision Associates ("Manhattan Eyeworks") and its owner, defendant David Forest Gross (collectively "Employer Defendants"), he was discriminated and retaliated against in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). Plaintiff also alleges that he was underpaid in violation of New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA"). Plaintiff also claims that defendants Gary Greenwald, Mukund J. Matani, Dental Associates of New York LLP ("Dental Associates"), Greenwald & Matani PTD (collectively "Non-Employer Defendants") engaged in similar acts of discrimination and retaliation and conspired with Employer Defendants in violating the FLSA and NYLL. Plaintiff never filed a charge with the Equal Employment Opportunity Commission ("EEOC") even though he alleges to having been wrongfully discharged on April 28, 2015.[1]

Employer Defendants appear to have been served with a copy of the Complaint on or about June 15, 2018. (Docket Nos. 21-22). Employer Defendants failed to file a responsive pleading by July 24, 2018, and on July 26, 2018 Plaintiff requested the entry of default against them. (Docket No. 23). After the clerk's office issued a certificate of default on July 26, (Docket Nos. 29-30), this Court issued a default judgment against all defendants on July 30, 2018. Docket No. 34).

---

[1] The Non-Employer Defendants have also filed a motion to vacate the default judgment, currently made returnable on November 26, 2018. Accordingly, the legal arguments raised by the Non-Employer Defendants, to the extent applicable to Employer Defendants, are incorporated herein by reference.

Employer Defendants, through legal counsel, emailed Plaintiff (who is appearing *pro se*) on November 12, 2018 and requested that he consent to vacating the default judgment. Plaintiff has not yet responded to this request, though based on various communications with him, he does not appear to be amenable to doing so.

As a result, Employer Defendants bring this motion pursuant to Fed.R.Civ.P 55(c) to vacate the default judgment.

## LEGAL ARGUMENT

Default judgments are not favored by the courts, particularly when a case presents genuine issues of fact. Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981). A court may thus vacate a default judgment for "good cause." Fed.R.Civ.P. 55(c). While the phrase "good cause" is not defined in the Federal Rules of Civil Procedure, the Second Circuit has established three criteria that are to be assessed in determining whether to relieve a party from a default or default judgment: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether the defaulting party presents a meritorious defense. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). Since defaults are disfavored and reserved for rare occasions, when any doubt exists as to whether a default should be granted or vacated, such doubt must be resolved in favor of the defaulting party. Enron Oil Corp., 10 F.3d at 96.

While the foregoing criteria are to be applied in vacating both defaults and default judgments, courts apply them more rigorously in the case of default judgments because the concepts of finality and litigation repose are more deeply implicated. Enron, 10 F.3d at 69, citing Meehan, 652 F.2d at 276. Thus, motions to vacate are left to the sound discretion of the

court, mindful of the need to maintain a balance between clearing its calendar and ensuring that litigants are afforded a reasonable opportunity to be heard on the merits of their defenses. Ibid.

In the matter herein, it is respectfully submitted that the Court grant Employer Defendants' motion to vacate the default judgment, as they have not acted willfully, Plaintiff will suffer no prejudice and Employer Defendants present numerous and various meritorious defenses. Employer Defendants only received a copy of Plaintiff's Complaint on June 15, 2018 (not May 25, 2018), at which time they also had been informed (correctly or incorrectly) that Plaintiff (who has a habit of suing prior employers) was currently incarcerated. Given this, and not having been the subject of a federal lawsuit before, Employer Defendants did not believe that they were required to take any action on their behalves.

Plaintiff will also not suffer any prejudice by a vacation of the default judgment aside from now having to litigate this matter on the merits. While a delay in the litigation alone cannot establish prejudice, Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983), much of the delay in this matter was nonetheless the result of Plaintiff's recalcitrance, not Employer Defendants. Plaintiff filed his Complaint back on November 27, 2017, yet failed to effectuate service of process on Employer Defendants until June 15, 2018, nearly seven months later. Hence, the primary reason this case has nearly reached its one-year anniversary is because of Plaintiff's unjustified delay in serving his Complaint and not the failure of Employer Defendants to submit a responsive pleading.[2]

---

[2] Plaintiff's failure to timely serve the Complaint also violates Fed.R.Civ.P. 4(m), which states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against the defendant nor order that serve be made within a specified time." (emphasis added).

Defendants will also be asserting various meritorious defenses, including, but not limited to, the following: (1) Plaintiff's claims under the ADEA, Title VII and ADA should be dismissed for failure to exhaust administrative remedies; (2) Plaintiff was an exempt employee under the FLSA and NYLL, and thus not entitled to overtime pay; (3) Plaintiff did not work the number of hours alleged in the Complaint; and (4) Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that Employer Defendants' Motion to vacate the default judgment be granted and Employer Defendants' provided with thirty (30) days in which to answer the Complaint or otherwise move.

Dated: November 19, 2018

Respectfully submitted,

BUDD LARNER, P.C.,

By: _____
Joshua E. Weiner, Esq.
150 John F. Kennedy Parkway
Short Hills, NJ 07078
Tel: (973) 315-4499
Fax: (973) 455-0027
Email: jweiner@buddlarner.com
*Attorneys for Fzoad.com Enterprises, Inc.*
*d/b/a Manhattan Eyeworks d/b/a Chelsea*
*Vision Associates and David Forest Gross*

4

# EXHIBIT
# "B"

1

```
J5NAAFARC                        Conference
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  RICHARD FARMER,

4                  Plaintiff,

5          v.                               17 CV 9300 (GBD)

6  FZOAD.COM ENTERPRISES INC., ET
   AL.,
7
                  Defendants.
8
   ------------------------------x
9                                          New York, N.Y.
                                           May 23, 2019
10                                         2:00 p.m.

11 Before:

12                     HON. ONA T. WANG,

13                                         Magistrate Judge

14                     APPEARANCES

15 RICHARD FARMER, PRO SE

16 LAW OFFICES OF WEINER & WEINER, LLC
        Attorneys for Defendant Fzoad.com
17 BY:  JOSHUA L. WEINER

18 MINTZ & GOLD LLP
        Attorneys for Defendant Dental Associates
19 BY:  ALEXANDER H. GARDNER

20

21

22

23

24

25

J5NAAFARC                    Conference

1   we have shown good cause that the defendants, the Matani

2   defendants, have a good excuse for not responding to the

3   complaint and that once they found out about it they responded

4   in filing this motion to vacate and that in any event that we

5   have a meritorious defense to all of the claims against us.

6        THE COURT:  OK.  All right.  Next, I'll hear from

7   Mr. Weiner and then Mr. Farmer.

8        MR. WEINER:  Thank you, your Honor.

9        A lot of what I say echoes the sentiments and what was

10   set forth by my co-counsel.  As it pertains to willfulness and

11   the case law is pretty abundantly clear that negligence or

12   carelessness clearly doesn't rise to a level of willfulness.

13        In this particular instance, my clients is the sole

14   propriety of the business, Mr. Gross.  His business, Manhattan

15   Eyeworks is a small optometry practice.  In his entire life

16   there as a business entity or as an individual, he had never

17   been named or part of a suit on either state level or the

18   federal level.  This was his first experience receiving

19   something.

20        On about June 15 he received in the mail a copy of the

21   complaint.  And just to demonstrate his non willfulness and the

22   his complete not wanting to evade process, there is a form

23   signing acknowledging service which he readily signed and

24   returned to the court immediately.  He could have technically

25   ignored it and put it away somewhere and that could possibly

J5NAAFARC                    Conference

 1   indicate a willfulness.  But he did not do that.  His

 2   understanding was that his responsibility began and end upon

 3   sending that form back to the Court because subsequent to that,

 4   obviously, Dr. Matani was also served a process

 5   contemporaneously.  I think it was one day apart.  And speaking

 6   with Dr. Matani, Dr. Matani had indicated that Mr. Farmer, and

 7   again, this is either, whether it's true or not, I know

 8   Mr. Farmer took issues with me setting this forth in the brief.

 9   And I'm not alleging that Mr. Farmer was in any way

10   incarcerated or put in jail.  This is what he was informed

11   about Dr. Matani.

12           My client having no experience at all with the court

13   system thought, well, if plaintiff is incarcerated and signed a

14   form acknowledging service, there's nothing further for me to

15   do on my end.  Again, we can argue that that might be careless

16   or negligent but that's not willfulness.  He was not

17   purposefully evading process in this particular instance.

18           In fact, once he received, immediately upon receiving

19   the inquest briefing schedule he called me.  I had worked with

20   him very briefly on a matter sometime before.  Called me,

21   showed me what it was and we immediately shortly after the

22   others defendants filed a motion to vacate default judgment, we

23   filed it as well and that was back in November.  So, I think

24   based on those facts there's no demonstration of all the

25   willfulness.

1    fact, that my client's purposefully delayed to interpose any

2    answer with the intention to injure the plaintiff which, again,

3    I think as set forth in my brief in today is entirely not the

4    case.  And he also makes an inference that not an inference, an

5    outright statement in his papers that defendants terminated all

6    the key employee witnesses at the facility.  And as such will

7    be able to conduct discovery from them.  He does not mention

8    one of the named key employees terminated.  In fact, there have

9    been no -- layoffs at Manhattan Eyeworks.  Nor has he been able

10   to demonstrate assuming that were true which it is not, that he

11   would still be able to depose those individuals so we all know

12   he could easily serve them with subpoenas and it would be

13   defendant's obligations to provide them with the last known

14   contact information for those individuals.

15          So, I would submit that even that were true which

16   again, your Honor, it is not plaintiff has been unable to

17   demonstrate how that in any way would prejudice his ability to

18   prosecute this matter.

19          Third prong and last on the meritorious defense, there

20   are numerous meritorious defenses that would be asserted.  In

21   fact, as co-counsel here had indicated, if this motion were to

22   be granted we fully intend on filing either in full or a

23   partial motion to dismissed under 12(b)(6).  The complaint is

24   deficient for numerous reasons.  It does not set forth at all

25   how in any way he was discriminated against.  He doesn't even

J5NAAFARC                    Conference

1          Plaintiff makes some unsupported arguments, one,

2     saying that the businesses are sophisticated, sophisticated

3     business people.  They're well aware of implications of not

4     responding.  Mr. Gross is an optometrist by trade, runs a very

5     small business and again, to this date as very little, if any,

6     familiarity with legal process.  He's not running a Fortune 500

7     company.  He's running a very small company that grosses a

8     little over a million dollars a year.  He is able to make a

9     living off of it and able to live and support his family.  But

10    by no means would I be -- and I think he would be comfortable

11    with me saying a sophisticated business person I think to the

12    way Mr. Farmer is trying describe him.  So, there was no

13    willfulness on the part of Mr. Gross or Manhattan Eyeworks.

14          The second prong is prejudice.  Is there prejudice to

15    the plaintiff?  The plaintiff's sole argument regarding

16    prejudice is that, well, your Honor, I took the time and effort

17    to prepare these default judgment papers and if you vacate it,

18    all of that will be for naught.  As I cited to in my reply

19    brief numerous cases Pecarsky and Hernandez basically stood for

20    the proposition as it pertains to this matter, that simply

21    filing and putting in the effort and time and attorney's fees

22    to filing for default judgment does not, would not constitute

23    prejudice in the absence of addition things of which there are

24    none.

25          Plaintiff also alleged, again, without any basis in

J5NAAFARC                    Conference

1   identify the protected category that he is in.  No way for my

2   clients to determine, whatsoever, what it is alleged and how he

3   was discriminated against and or retaliated against as a result

4   of apparently, again, the complaint is not entirely clear.

5           Retaliation for reporting or complaining about

6   discriminatory conduct on top of which it's not just deficient

7   in the way in which it was pled.  Mr. Gross had previously

8   stated, we submitted that he did not exhaust his administrative

9   remedies at EEOC and hence, the complaint cannot proceed in

10  court.

11          As it pertains to the wage-an-hour claim, the Fair

12  Labor Standards Act claim, we would vigorously defend any claim

13  that he is entitled to employment, one, assuming that he can

14  demonstrate he worked overtime hours.  But on top of which he

15  was an exempt managerial administrative executive employee and

16  we believe the evidence will clearly bear that out.  He is not

17  entitled to any overtime.  He received a salary that was above

18  the threshold level in order to receive that exemption.  So he

19  was not entitled to any overtime and on top of which several of

20  his claims are deficient by failing to file within the time of

21  the applicable statute of limitations.

22          I could list more that would probably be set forth in

23  the 12(b)(6) motion but clearly, there are at the very least

24  strongly disputed issues of fact that need to be adjudicated.

25  As your Honor is aware, this circuit, as well as every other

J5NAAFARC                     Conference

1    circuit in the country, disfavors the issuance of default

2    judgment and favors matters being adjudicated on their merits

3    which I think this matter greatly needs to be done.

4            Plaintiff wants all of his allegations to be taken at

5    complete face value and to be seen as true for the purposes of

6    this motion which is not the standard.  And on top of which,

7    and he only argues, the majority of his arguments in his

8    briefing papers are about the legitimacy or merits of his

9    underlying claims.  He doesn't really fully address outside of

10   baseless allegations that have no basis in fact that the

11   defendants as a whole engaged in some grand scheme to evade

12   this case and then suddenly out of the woodworks pop up only a

13   few months later to file a motion to vacate default judgment.

14           Clearly, that is not the smartest way for any

15   defendant to go about it and simply ignore something and then

16   go through what has been some quite some considerable expense

17   and time vacating a default judgment when in actuality the

18   simplest procedure, if he were really seeking to do something

19   practical, would be to answer the complaint or file a

20   dispositive motion.

21           So, as a result, your Honor, I would submit that

22   plaintiff has been unable to rebut any of the defendant's

23   proffers with respect to each and every element of the claim to

24   vacate default judgment, that being willfulness, prejudice and

25   existence of meritorious defenses.

1          Thank you.

2          THE COURT:  Thank you.

3          All right.  Mr. Farmer, your turn.  You have been very

4    patient.  I'd like to hear, talk a little bit about

5    willfulness, about prejudice to you and then also whether

6    there's meritorious defenses

7          MR. FARMER:  Can I start with Joshua Weiner's argument

8    first, your Honor?

9          THE COURT:  You can take it however you would like to

10   approach it.  OK?

11         MR. FARMER:  OK.  I was hired on or about August 2014

12   as a salesperson and once the manager of the store -- I forgot

13   his name -- he went on a drug binge and I was promoted to be

14   the store manager because of my fresh ideas when it came to the

15   optical business.

16         But I want to answer some of the statements that he

17   made.  I'm talking about Joshua Weiner.

18         THE COURT:  OK.  Just a quick question so I get the

19   chronology right in my head.

20         MR. FARMER:  OK.

21         THE COURT:  Approximately, when were you promoted to

22   be the store manager?

23         MR. FARMER:  When I started in August I think that I

24   was promoted, I think four to six weeks later in September of

25   2014.  And again, the manager went on a drug binge did not call

J5NAAFARC                    Conference

1   having a conversation with Dr. Matani and he just finished up

2   with the dental patient and I think that we wanted the air

3   conditioning turned on because the majority of the time it was

4   90 to 100 degrees in the store because it's an old building the

5   furnaces allow heat to the ground floor, but he refused to turn

6   on air conditioning.  And he said to me, he said no matter what

7   it takes I'm going to kind after a way to get you out of here

8   because, OK, even if it affects Dr. Gross' lease.  If he

9   doesn't fire you I am not going to extend his lease.

10          And that is mentioned in my complaint, your Honor.

11          THE COURT:  If a case gets into discovery we'll start

12   to see evidence and I'll start to see documents related to

13   that.

14          MR. FARMER:  Right.

15          THE COURT:  So, you filed the complaint in November of

16   2017 and the defendants were served around June of 2018.

17          MR. FARMER:  That's what they say, your Honor.  But

18   when you look at the docket, that's not true.  On 5/10/2018 on

19   the docket, summons issued as to Afso.com, doing business as

20   "Manhattan Eyeworks".  And I believe that Dr. Matani was

21   actually served prior to that.

22          THE COURT:  Normally a party can't get served before

23   the summons is issued.  That usually doesn't happen.  So, I'm

24   going to look that up on the docket but even so, even if that's

25   the case --

J5NAAFARC                        Conference

1          MR. FARMER:  Well, they were served by the United

2     States Marshals, your Honor.

3          THE COURT:  I know but the summons has to issue before

4     service can be made, unless they were served with the earlier

5     version of the complaint.

6          MR. WEINER:  Your Honor, if I may, the name on which

7     the receipt and return of service, was filed with the Court was

8     6/15 indicating that Dr. Gross was served on May 26, 2014.  I

9     may have spoken -- I'm looking at the actual date as opposed to

10    the receipt and return of service.  So, it appears that my

11    clients were served on May 25, 2013, approximately, three weeks

12    before --

13         THE COURT:  All right.  You got an admission out of

14    Mr. Weiner.

15         MR. FARMER:  I'm surprised by that.

16         THE COURT:  Well, the docket says what it says.

17         All right.  So the defendants were served in May 2018,

18    and then they, actually, they filed their motion to vacate

19    default --

20         MR. GARDNER:  November 2nd for Matani.

21         THE COURT:  First motion to vacate is about six months

22    later.

23         MR. FARMER:  Right.  Six months later.

24         THE COURT:  Other than the delay in time, Mr. Farmer,

25    do you have other reasons for prejudice to you and by

J5NAAFARC                    Conference

1          MR. FARMER:  In June of 2018.  I worked there.  I knew

2     what was going on.  Dr. Gross informed me of a lot of things.

3     Including Dr. Matani's and cancer.  So, when I got a copy --

4          THE COURT:  So you are saying that Dr. Gross knew Dr.

5     Matani had cancer before Dr. Matani was diagnosed with cancer?

6          MR. FARMER:  Dr. Matani was diagnosed prior to 2014,

7     your Honor.  And he informed Dr. Matani informed Dr. Gross that

8     he had cancer and he didn't have long to give live.

9          This is also in my briefs, your Honor.

10          THE COURT:  I understand.  It's just hard to

11     understand if -- because Dr. Matani's estate -- let's assume

12     Dr. Matani's estate is going to have documentation that will

13     show whether he was diagnosed with cancer in 2018 or some time

14     before that.  I had a hard time understanding how an as officer

15     of the court, an attorney who is licensed to practice before

16     this Court.

17          I understand your judgment, Mr. Farmer, I am going to

18     ask you to refrain because it's not respectful to the other

19     side.  I understand that you feel that you have been

20     disrespected but we're here now.  You are here before me in the

21     court house.  I expect mutual respect.

22          MR. FARMER:  You are going in the right direction,

23     your Honor.

24          THE COURT:  So, I guess what I'm saying is Mr. Gardner

25     is an officer of the court that is as an attorney -- no that's

J5NAAFARC                    Conference

1   not something where you make a face that you don't believe that

2   he is an officer of the court.  If he is allowed to practice

3   here as an attorney, there are certain oaths he needs to take.

4   And those include -- to the Court, you will not knowingly

5   misrepresent something or misrepresent a fact.  OK?

6           MR. FARMER:  Your Honor, I wasn't making a face.  I

7   was waiting for your response.

8           THE COURT:  OK.  Stop.  We are not going to engage in

9   this.  OK?

10          MR. FARMER:  OK.

11          THE COURT:  What I'm trying to say is I need to be

12  able to speak without being interrupted and what I am saying is

13  that I am having a hard time understanding how an officer of

14  the court would potentially make a misstatement of fact of such

15  a gross nature unless they had some way to support what their

16  factual assertion was.  OK?  And I'm not saying that I am

17  ruling or finding that somebody is right and somebody is not

18  right.  But I think even this part of the dispute illustrates

19  why this case probably needs to be heard on its merits?  OK.

20          Now you can speak Mr. Farmer I see you bite you are

21  why you your lip is thank you for letting me get that out.

22          MR. FARMER:  What you just said I might have said it

23  because it needs to be heard.  OK?  But I thought that I laid

24  out everything in my arguments, when the defendants made their

25  motion to vacate on 11/2/2018 because I was surprised about

J5NAAFARC                       Conference

1     their position, on 11/8/2018 six days later they were served

2     federal subpoenas to produce medical records they failed to do

3     that.

4              THE COURT:   That's also somewhat part of process is

5     once you are in court and we're going to have a process and we

6     are going to have discovery, you don't get to take discovery

7     and prove your case if you are going to go forward with an

8     inquest.  OK?  If you are going to go forward with an inquest,

9     say you win on the motion to vacate default which means that I

10    would recommend to the district judge that a default be entered

11    and that we move into an inquest on damages.  You still bear

12    the burden of proof which means that you still have to prove

13    that you are damaged.

14             OK.  And you have to prove the extent of your damages

15    which essentially is like litigating the case.  So, why not let

16    the defendants answer, we'll get to the discovery, if you need

17    to be getting documents by subpoena or by document request?  I

18    can order that to happen but that happens after the issue of

19    the default is dealt with.  So, everything has to go in its

20    process.  OK?

21             MR. FARMER:   OK.  Well, my number one issue is that

22    they made falsed claims in their motion to vacate and I'm also

23    prejudiced by it, not only with Joshua Weiner informing the

24    Court that I was incarcerated --

25             THE COURT:   Stop.  I've heard this argument several

J5NAAFARC                        Conference

```
 1   times already in the papers and everything else.  Mr. Weiner
 2   did not inform me that you were incarcerated.
 3             MR. FARMER:  Well, he didn't establish --
 4             THE COURT:  Stop.  Stop.
 5             MR. FARMER:  OK.
 6             THE COURT:  We're not going to argue.  OK?  The way I
 7   read it was that Mr. Gross believed or believed that he had
 8   been told that you were incarcerated and therefore, Dr. Gross
 9   didn't need to respond to the complaint.  Now, before you jump
10   in with whether you were incarcerated or not or how offensive
11   that is, let me just start with as a basic matter the fact that
12   somebody, even if you were incarcerated it doesn't matter
13   because he had an obligation to respond to the complaint better
14   than he did.  OK?  He was not supposed to wait until he got a
15   briefing schedule on the inquest to how to take this case
16   seriously.
17             And that is an issue that I do have with Dr. Gross and
18   the Gross group of defendants.  I deal with lot of cases where
19   one party might actually be incarcerated and what has happened
20   sometimes is lawyers don't take an incarcerate party seriously,
21   just like sometimes lawyers and defendants don't take somebody
22   who is representing themselves seriously.
23             I think by Mr. Gardner or Mr. Weiner showing up today,
24   they are showing that they and their clients are now taking
25   that case seriously.  They may not have been taking it
```

J5NAAFARC                    Conference

1    seriously before.  That's not great but they're here today.

2    They're here now.  And they're here ready to respond and deal

3    with the case.

4           MR. FARMER:  But Dr. Matani's not here.

5           THE COURT:  I think if Dr. Matani had a choice he

6    would prefer to be here.

7           MR. FARMER:  He had a choice to six months prior to

8    him passing away.

9           THE COURT:  Well, you know that's going to be an

10   argument over whether somebody, trying get into the head of

11   somebody who is no longer with us.

12          MR. FARMER:  OK.  I understand.

13          THE COURT:  It's unfortunate but --

14          MR. FARMER:  He is no longer with us.

15          THE COURT:  If it turns out that you have and it turns

16   out according to facts that by the time he was served he had

17   four months to live, what are you going to do with your four

18   months?  Maybe this case is not going to be the highest

19   priority.

20          Now, I'm not saying that anybody should have just

21   ignored it or anything like that but I am saying, I am

22   suggesting that if you -- there's other ways to look at how the

23   factors come down.  And unfortunately, it's my job to look at

24   the facts and the chronology which is why I asked you for the

25   chronology and the timing of all of this because I am going to

J5NAAFARC                    Conference

1     have to take a look at the facts and assess whether the delay

2     in responding was in fact willful.

3              Okay.  That's assessment the judge has to make.

4              OK.  Go ahead, Mr. Farmer.

5              MR. FARMER:  So, we have one dilemma here.  OK?

6     Defendant's counsel states that in late June Dr. Matani was

7     diagnosed with cancer for the first time in his life.  I'm

8     disputing that stating that Dr. Gross informed me in

9     September 2014 that Dr. Matani had a short time to live because

10    he was diagnosed with cancer.  So, that is one dilemma.

11             Can I go into the -- cause I want mention the second

12    dilemma; is that OK?

13             THE COURT:  Sorry.  The second element?

14             MR. FARMER:  Yes.

15             THE COURT:  OK.  Go ahead.

16             MR. FARMER:  Because it's something that Counsel

17    Weiner mentioned to you earlier which is not fact.  Counsel

18    Weiner mentioned that Dr. Gross has no experience with the

19    court system.

20             THE COURT:  I am not swayed by that anyway and I don't

21    really want to hear that because I already said to you earlier

22    that just because somebody doesn't have experience with the

23    Court system doesn't mean that if you get a summons and

24    complaint then you should just ignore it.

25             MR. FARMER:  I understand, but I am just trying to

1    optical employees.  I've seen him massaging on the neck and

2    kissing on the face dental employees.  You will see in the text

3    messages that I sent or should I say that was actually

4    submitted on Monday, May 21, the text messages will show the

5    hostile environment that surrounded the dental and the optical.

6    And Dr. Gross states in those text messages that the dental

7    associates have no business interfering in the optical but they

8    did on a daily basis because Dr. Matani controlled the entire

9    office and technically Dr. Gross was working under him.

10          Also on the text messages, it will show that he gave

11   me the permission to actually deal with or talk to Dr. Matani

12   in regards to harassment by the dental associates.

13          I think my three minutes are up now.

14          THE COURT:  OK.  Anything further from the defendants?

15          MR. WEINER:  Briefly, your Honor?

16          THE COURT:  Keep it very brief.

17          MR. WEINER:  I will, your Honor.

18          To the extent that I think the gist of what plaintiff

19   was trying to state to your Honor in saying that I was making

20   the misstatements of fact or willful misstatements of facts, I

21   can only convey the Court what is conveyed to me.  The client

22   tells me something that is starkly against the weight of

23   evidence that I've seen before me, I don't make that

24   representation to the Court.  I do not nor have I ever made a

25   willful, deliberate, misrepresentation to the Court.

# EXHIBIT
# "C"

Google

The law office of weiner & weiner llc       Q

Sign In

Q All   Maps   News   Shopping   Images   More     Settings   Tools

About 1,440,000 results (0.58 seconds)



**Weiner & Weiner, P.C. Attorneys at Law**
www.weinerandweiner.net/ ▼
Weiner & Weiner, P.C. Attorneys at Law. ... Weiner & Weiner. Home; About; Services; Contact.
Weiner & Weiner, P.C.. Attorneys at Law. About. The Law Firm of ...

**Weiner & Weiner, P.C., Attorneys at Law - Home | Facebook**
https://www.facebook.com › Places › East Brunswick, New Jersey › Business Service ▼
      Rating: 5 · 9 votes
Weiner & Weiner, P.C., Attorneys at Law - 385 Cranbury Rd, Ste 7, East Brunswick, New Jersey 08816
- Rated 5 based on 9 Reviews "Attorney Jay Weiner is...

**Weiner Law Group LLP: New Jersey Full Service Law Firm**
https://www.weiner.law/ ▼
With offices in NJ & NY, Weiner Law Group has provided outstanding counsel, insightful counsel,
tailored strategies & focused client advocacy since 1988.

**About Our Firm - Wiener and Wiener LLP**
https://www.wienerlaw.com/About-Our-Firm/ ▼
Our attorneys have decades of experience in business law, estate planning and tax law. Offices in
Allentown and West Palm Beach. Call 610-821-8600.
Missing: llc | Must include: llc

**The Law Office of Weiner & Mazzei: Serving Passaic County and ...**
www.weinermazzei.com/ ▼
The Law Office of Weiner & Mazzei. Serving Passaic County and Northern New Jersey. Practice
Areas: Personal Injury Litigation · Catastrophic Loss · Workers ...

**Neil S. Weiner, Esq., LLC - a Clifton Park, New York (NY) Family Law ...**
https://pview.findlaw.com/view/4900820_1 ▼
Find Neil S. Weiner, Esq., LLC, a Clifton Park, New York (NY) Law Firm focused on Family Law,
Divorce, etc.

**Atlanta Employment Law**
https://www.atlantaemployeelawyer.com/ ▼
Weiner & Sand LLC ... Employment and Consumer Law Attorneys ... a decade, our practice has
focused exclusively on Employment and Consumer Rights law.

**Neil S. Weiner LLC**
https://www.neilweiner.com/ ▼
When you are facing a challenging legal situation such as divorce, car accident injuries or a contract
dispute, turn to Neil S. Weiner, LLC. 518-982-2459.

**Jeffrey S. Weiner, P.A. | Miami Criminal Defense Lawyer**
https://www.jeffweiner.com/ ▼
At Jeffrey S. Weiner, P.A., our Miami criminal defense lawyers are highly experienced in this ... Any run-
in with the law can be frightening and can have serious ... Our firm's founder, Jeffrey S. Weiner, is a
Board Certified Criminal Trial Lawyer by ...
Missing: llc | Must include: llc

**The Law Office of Stephen H. Weiner**
www.sweinerlaw.com/ ▼
Stephen Weiner trusts and estates attorney in Queens, Manhattan and The Bronx.
Missing: llc | Must include: llc

Searches related to The law office of weiner & weiner llc

weiner and weiner law firm louisville ky     weiner law group red bank nj
weiner and weiner louisville ky     weiner law group bridgewater nj
weiner law firm parsippany     weiner law group salary

1 2 3 4 5 6 7 8 9 10     Next

11364, New York - From your Internet address - Use precise location - Learn more

Help   Send feedback   Privacy   Terms

---



See photos      See outside

**The Law Offices of Weiner & Weiner**

Website    Directions    Save

Lawyer in Morristown, New Jersey

Address: 60 Washington St #101g, Morristown, NJ 07960
Hours: Open · Closes 5PM ▾
Phone: (973) 615-6666

Suggest an edit

**Questions & answers**      Ask a question
Be the first to ask a question

**Reviews** ⓘ     Write a review   Add a photo
Be the first to review

**From The Law Offices of Weiner & Weiner**

"Weiner & Weiner has over 50 years experience in aiding companies and
employees deal with the employment law issues, Labor union issues and
defending employers against OSHA. In regard to employment law we
handle discrimination whistlebloweractions,...More


The Law Offices of Weiner & Weiner



Were You Fire Without A
Cause? Call Us Now @ (973)
615-6666! Law Offices Of...
3 days ago

**People also search for**      View 15+ more

Murray   Celli,   The   Lenzo &
Richard J   Schlossb...   Gorman   Reis, LLC
Attorney   De Meo...   Law Firm   Employment
     Attorney   Criminal justice   attorney
            attorney

Feedback





PAUL I. WEINER*
JOSHUA L. WEINER**

OF COUNSEL
HILLARY C. KRUGER***

ADMITTED TO PRACTICE:
* NJ, NY & PA
** NJ & NY
***NJ

**LAW OFFICES OF**
**WEINER & WEINER** LLC
*COUNSELLORS AT LAW*

60 WASHINGTON STREET, SUITE 101G
COURTHOUSE PLAZA
MORRISTOWN, NEW JERSEY 07960

*TEL:* 973-455-0026
*FAX:* 973-455-0027

EMAIL:
PIW@WEINERATTORNEY.COM
JLW@WEINERATTORNEY.COM
HCK@WEINERATTORNEY.COM

February 7, 2012

### New Jersey Adopts Federal White Collar Exemptions

On September 6, 2011, New Jersey repealed its existing state regulations defining overtime exemptions and expressly adopted the exemptions for administrative, executive, professional, outside sales, and computer employees as defined by federal regulations (29 C.F.R. Part 541) interpreting the Fair Labor Standards Act ("FLSA"). The only noted exception to New Jersey's complete adoption of the FLSA definitions is that those provisions applying solely to government employees are excluded under New Jersey state law because New Jersey does not define "employer" as including government employers. New Jersey's adoption of the FLSA is significant because, prior to the adoption, it was unclear whether New Jersey recognized the FLSA's highly compensated employee exemption which lessens the employer's burden of proving an employee is exempt where they make at least $100,000 per year.

Although, overall, this is great news for New Jersey's private employers, several issues remain unclear. First, it is unclear how New Jersey courts will apply this change in law to pending class actions where the class period spans the change in regulation. Under existing law in other jurisdictions, it is possible the courts will bifurcate the claim period and apply the amended regulations only to claims arising after the effective date of the amendment. *See Baden-Winterwood v. Life Time Fitness, Inc.,* 566 F.3d 618, 628-30 (6th Cir. 2009) (bifurcating claim period and applying different salary basis tests to pay periods before and after the 2004 amendment to the FLSA regulations); *In re Dollar Gen. Stores FLSA Litig.,* 766 F. Supp. 2d 631, 638 (E.D.N.C. 2011) (applying "the short test under former regulations to pay periods occurring before 23 August 2004, and the current regulations apply to pay periods occurring after that date."); *Kanatzer v. Dolgencorp, Inc.,* 2010 U.S. Dist. LEXIS 67798, *n. 2 (E.D. Mo. 2010) ("Where, as here, the claim period spans the change in regulation, it is appropriate to apply the

February 7, 2012
Page 2

amended regulations to the actions occurring after the amendment took effect, while applying the un-amended regulation to the actions occurring before the amendment."); *Davis v. Mountaire Farms, Inc.,* 551 F. Supp. 2d 343, 348 (D. Del. 2008) (same).

Alternatively, employers could argue that the new regulations should apply throughout the entire class period, including claims that pre-date the amendment. New Jersey recognizes an exception to the general rule against retroactive application where the administrative changes were "curative" of the pre-existing framework and designed to clarify - rather than change - the law. See *Kendall v. Snedeker*, 219 N.J. Super. 283, 287 (N.J. Super. 1987) (noting exception to the general rule of prospective application for "curative" amendments to clarify rather than change the law); *Gibbons v. Gibbons*, 86 N.J. 515, 524 (N.J. 1981) (finding retroactive application appropriate where "the amendment . . . is curative insofar as it reflects the Legislature's intent to improve a statutory scheme already in existence."). The legislative history accompanying New Jersey's recent adoption of the federal standards suggests that New Jersey has always intended its wage-and-hour laws to be consistent with the federal framework. *See* 43 N.J.R. 2352(a) (Sept. 6, 2011) (stating that New Jersey's post-2004 failure to reconcile State rules regarding exemptions with the Federal regulations was an "oversight."). This argument, however, has yet to be tested by New Jersey courts.

Also unclear, is that New Jersey's adoption of the FLSA exemptions coupled with the repeal of existing state definitions inadvertently omitted a long-recognized exemption in New Jersey for commissioned inside salespeople. This is because New Jersey previously recognized as an "administrative" employee, an employee whose "primary duty consists of sales activity and who receives at least 50 percent of his or her total compensation from commissions. The federal regulations do not similarly define the administrative exemption as including inside salespersons. Recognizing their error, on November 21, 2011, the New Jersey Department of Labor and Workforce Development proposed a rule to readopt the omitted language recognizing commissioned sales people as exempt under the administrative exemption. Written comments will be accepted on this new rule through January 20, 2012.

**Lessons Learned:** Employers should take comfort that, at least post-September 6, 2011, private employees will be considered exempt under New Jersey state law if they satisfy the definitions applicable to the FLSA. However, until tested by the courts, it is unclear how this change in law will apply to ongoing litigation that spans the amended rules. Employers should consider the

February 7, 2012
Page 3

above arguments to support application of the new rules to existing class claims.  Finally, in light of New Jersey's inadvertent repeal of the inside salesperson exemption, employers should be cautious and consider limiting those employees' hours until the exemption is readopted in the coming year.

*LAW OFFICES OF*
*WEINER & WEINER LLC*

PAUL I. WEINER*
JOSHUA L. WEINER**

*COUNSELLORS AT LAW*

EMAIL:
PIW@WEINERATTORNEY.COM
JLW@WEINERATTORNEY.COM

ADMITTED TO PRACTICE:
* NJ, NY & PA
** NJ & NY

*60 WASHINGTON STREET, SUITE 101G*
*COURTHOUSE PLAZA*
*MORRISTOWN, NEW JERSEY 07960*

TEL:  973-455-0026
FAX:  973-455-0027

January 3, 2017

## BANK EMPLOYMENT LAW UPDATE

Dear Client and Friends:

I am enclosing an article I have drafted regarding sexual harassment investigations.

The law has evolved in the conducting of a sexual harassment investigation to a complex and technical procedure, full of pitfalls and flaws.

As a practical matter, if you are in the midst of a sexual harassment complaint, it is advisable to use either trained investigators that have been trained by professionals or use outside lawyers who have had substantial experience in carrying out these investigations.

It is important to note that if the investigation is carried out in a cursory matter and not promptly and not with detailed findings, your defense to sexual harassment cases will be weakened substantially.

I therefore recommend that you conduct training of the individuals who will conduct your sexual harassment cases who work for the bank or employer or rely on outside professionals.

If you have any questions or are interested in this type of training or use of investigators, please call.  We would be happy to assist you in any way possible.

Very truly yours,

Paul I. Weiner
Joshua L. Weiner

S:\FORMS\NEW\Sexual Harassment Ltr.doc

# EXHIBIT "D"



# EXHIBIT
# "E"

**UNITED STATES OF AMERICA ex rel., BRIAN ARYAI, Relator,**

**v.**

**SKANSKA, et al., Defendants.**

<u>No. 09 Civ. 5456 (LGS).</u>

**United States District Court, S.D. New York.**

March 19, 2019.

United States of America, Plaintiff, represented by Joshua Lawrence Weiner, Law Offices of Weiner & Weiner, LLC.

Brian Aryai, ex. rel., Plaintiff, represented by Joseph G. Sconzo, Law Office of Joseph G. Sconzo, P.A., pro hac vice, Joshua Lawrence Weiner, Law Offices of Weiner & Weiner, LLC, Paul Ivan Weiner, Paul I. Weiner, LLC & Robert Wayne Sadowski, Sadowski Katz LLP.

Skanska, Defendant, represented by Bruce D. Meller, Peckar & Abramson, P.C. & Patrick J. Greene, Jr., Peckar & Abramson, PC.

Turner Construction Company, Defendant, represented by Bruce D. Meller, Peckar & Abramson, P.C., Patrick J. Greene, Jr., Peckar & Abramson, PC & Saurabh Sanghvi, Wilmer Cutler Pickering Hale & Dorr L.L.P.

Tishman Construction Corporation, Defendant, represented by Hallie Beth Levin, Wilmer Cutler Pickering Hale & Dorr LLP.

Plaza Construction Corporation, Defendant, represented by Inna Coleman, Paul Hastings LLP, Kenneth M. Breen, Paul Hastings LLP, Shahzeb Lari, Paul Hastings LLP & Zachary Zwillinger, Paul Hastings LLP.

Hunter Roberts Construction Group, Defendant, represented by John L. Gardiner, Skadden, Arps, Slate, Meagher & Flom, L.L.P., Lea Haber Kuck, Skadden, Arps, Slate, Meagher & Flom LLP & R. Ryan Stoll, Skadden, Arps, Slate, Meagher & Flom, LLP.

Parsons Transportation Group, Interested Party, represented by Clifford Louis Thau, Vinson & Elkins L.L.P., Christian Sheehan, Vinson & Elkins L.L.P., pro hac vice, Craig D. Margolis, Vinson & Elkins L.L.P. & Marisa Antos-Fallon, Vinson & Elkins, LLP.

# OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge.

Relator Brian Aryai ("Relator") brings this action under the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA") against several construction companies whom Relator alleges engaged in fraudulent payroll practices. Defendants Tishman Construction Company ("Tishman"), Plaza Construction Corporation ("Plaza"), Turner Construction Company ("Turner"), Hunter Roberts Construction Group ("Hunter Roberts") and Skanska, (collectively, "Defendants") move to dismiss the Third Amended Complaint (the "TAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Relator cross-moves for partial summary judgment. For the reasons discussed herein, Defendants' motion to dismiss is granted and Relator's cross-motion for summary judgment is denied as moot.

# I. BACKGROUND

The facts below are taken from the TAC and exhibits attached to the TAC. *See TCA Television Corp. v. McCollum,* 839 F.3d 168, 172 (2d Cir. 2016). The facts alleged in the TAC are assumed to be true for purposes of this motion. *See SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.,* 829 F.3d 173, 175 (2d Cir. 2016).

# EXHIBIT
# "F"

25 F.Supp.3d 376 (2012)

**Brian ARYAI, Plaintiff,**

v.

**FORFEITURE SUPPORT ASSOCIATES, LLC, United States Marshals Service, and Eben Morales,
in his individual and official capacities, Defendants.**

No. 10 Civ. 8952(LAP).

**United States District Court, S.D. New York.**

Signed August 27, 2012.

379 *379 Joshua Lawrence Weiner, Law Offices of Weiner & Weiner, LLC, Paul Ivan Weiner, Paul I. Weiner, LLC Morristown, NJ, for Plaintiff.

David Scott Warner, Christine Lee Hogan, Littler Mendelson, P.C., New York, NY, for Defendants.

## *MEMORANDUM AND ORDER*

LORETTA A. PRESKA, Chief Judge.

This motion by Defendants United States Marshals Service ("USMS") and Eben Morales ("Morales") (collectively, the "Moving Defendants") to dismiss the claims of Plaintiff Brian Aryai ("Plaintiff") presents, *inter alia*, two questions of first impression in this district: (1) whether the amended whistleblower provision of the False Claims Act ("FCA") provides a cause of action against individual defendants; and (2) whether to recognize an action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), on behalf of an employee of a government contractor who experiences retaliation for engaging in speech protected by the First Amendment. For the reasons set forth below, the Court answers both questions in the negative and grants the Moving Defendants' motion to dismiss [Dkt. No. 15].[1]

# I. BACKGROUND

The Court takes as true the following factual allegations in the amended complaint and draws all reasonable inferences in favor of Plaintiff. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008).

Plaintiff was employed as a Senior Forfeiture Financial Specialist by Forfeiture Support Associates, LLC ("FSA"), a company that "provides staffing and support solutions to government agencies." (Am. Compl. ¶¶ 4-5.) One of those agencies is USMS, an agency responsible for, as relevant here, managing and disposing forfeited properties the Government has seized as proceeds of criminal activities. (*Id.* ¶ 6.) USMS performs that function pursuant to the Asset Forfeiture Program ("AFP") of the Department of Justice. (*Id.*) At all relevant times, Morales served as Acting Assistant Director of the AFP. (*Id.* ¶ 7.) One division within the AFP is the Complex Assets Group ("CAG"), "which is responsible for the disposition of seized and forfeited financial instruments, businesses, majority and minority business interests and substantial real estate." (*Id.* ¶ 11.)

A core aspect of FSA's business is providing support services to the AFP pursuant to an Asset Forfeiture Support Contract ("AFSC"). (*Id.* ¶¶ 4-5.) "Pursuant to the [AFSC], the Government purportedly has the contractual right to require FSA to remove any of its employees from performance under the contract." (*Id.* ¶ 56.) "However, in instances where the removal of an employee is for substandard performance or behavior negatively impacting *380 delivery of services, the [AFSC] provides FSA an opportunity to resolve the situation so as to allow the employee to remain on the contract." (*Id.* ¶ 57.)

380

Plaintiff began working with the AFP in New York City on October 13, 2009. (*Id.* ¶¶ 8-9.) Plaintiff claims that, in early

# EXHIBIT
# "G"



# New York State Unified Court System

## COURTS

### *Attorney Detail*

**as of 07/26/2019**

Attorney Search

Attorney Registration

Registered In-House Counsel Search

In-House Counsel Registration

Legal Consultant Registration

Resources

E-Courts

Contact Us

| | |
|---|---|
| Registration Number: | 1648161 |

**PAUL IVAN WEINER**
PAUL I. WEINER, ESQ., BUDD LARNER, P.C.
150 JOHN F KENNEDY PKWY
SHORT HILLS, NJ 07078-2703
United States
(973) 315-4542

| | |
|---|---|
| E-mail Address: | PWEINER@BUDDLARNER.COM |
| Date Admitted in NY: | 03/14/1968 |
| Appellate Division Department of Admission: | 2 |
| Law School: | BKLYN |
| Registration Status: | Currently registered |
| Next Registration: | Aug 2020 |
| Disciplinary History: | No record of public discipline |

Search Again

The Detail Report above contains information that has been provided by the attorney listed, with the exception of REGISTRATION STATUS, which is generated from the OCA database. Every effort is made to insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding disciplinary actions must be confirmed with the appropriate Appellate Division Department. Information on how to contact the **Appellate Divisions** of the Supreme Court in New York is available at www.nycourts.gov/courts.

If the name of the attorney you are searching for does not appear, please try again with a different spelling. In addition, please be advised that attorneys listed in this database are listed by the name that corresponds to their name in the Appellate Division Admissions file. There are attorneys who currently use a name that differs from the name under which they were admitted. If you need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800 or attyreg@nycourts.gov.

## New York State Unified Court System

COURTS

LITIGANTS

ATTORNEYS

JURORS

JUDGES

CAREERS

SEARCH

# COURTS

## Attorney Detail

### as of 07/26/2019

| | |
|---|---|
| Registration Number: | 4510509 |
| | **JOSHUA LAWRENCE WEINER** |
| | BUDD LARNER, PC |
| | 150 JOHN F KENNEDY PKWY |
| | SHORT HILLS, NJ 07078-2703 |
| | United States |
| | (973) 315-4499 |
| E-mail Address: | |
| Date Admitted in NY: | 01/30/2008 |
| Appellate Division Department of Admission: | 2 |
| Law School: | Hofstra University Maurice A. Deane School of Law |
| Registration Status: | Currently registered |
| Next Registration: | Jul 2020 |
| Disciplinary History: | No record of public discipline |

Search Again

The Detail Report above contains information that has been provided by the attorney listed, with the exception of REGISTRATION STATUS, which is generated from the OCA database. Every effort is made to insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding disciplinary actions must be confirmed with the appropriate Appellate Division Department. Information on how to contact the **Appellate Divisions** of the Supreme Court in New York is available at www.nycourts.gov/courts.

If the name of the attorney you are searching for does not appear, please try again with a different spelling. In addition, please be advised that attorneys listed in this database are listed by the name that corresponds to their name in the Appellate Division Admissions file. There are attorneys who currently use a name that differs from the name under which they were admitted. If you need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800 or attyreg@nycourts.gov.

# EXHIBIT
# "H"

# USING MEDIATION

................................. *Instead of Litigation in* .................................

# EMPLOYMENT LAW ISSUES



## PAUL I. WEINER
### *ATTORNEY AND MEDIATOR*

973-455-0026 | weineremploymentlaw.com

© 2014 by Paul I. Weiner. All rights reserved.

# WELCOME

Thank you for considering my legal services. I have spent more than 45 years of my career working as an Employment and Labor Lawyer. I have represented clients from Fortune 100 companies, as well as individual employees. This includes cases involving Nabisco Brands and GAF.

During my time in practice, I have overseen dozens of cases and I understand that aggressive litigation is not always the right solution for everyone. Though taking an issue to trial is sometimes necessary, mediation can provide a cost-effective solution, especially in cases involving employment and labor law.

I have been a court certified mediator in both state and federal courts for more than 20 years. My goal is to provide cost effective settlement and mediation services to as many clients as possible. My proven track record includes a 90% settlement rate, which means nearly every mediation session I facilitate ends with success.

I believe I can help you find the best and most effective way to resolve your legal issues. My experience includes a keen understanding of the legal system and I have examined legal issues from a variety of angles. I have been quoted in the New York Times, the Star Ledger, the Bergen Record and other news publications. From speaking engagements to the writing of articles for many of the most well respected legal publications, law is my passion. I have also been a guest speaker on CBS news, MSNBC, Channel 12 news and numerous radio talk shows.

I hope my practical experience and legal know-how can provide unique opportunities for employers and employees both in preventing legal complications and offering guidance and representation in legal matters when they arise, whether as legal counsel or mediator.



Again, thank you for considering me to help with your legal issue.

## Paul I. Weiner, Esq.
Law Offices of Weiner & Weiner LLC
60 Washington Street, Suite 105G
Courthouse Plaza
Morristown, NJ 07960
piw@weinerattorney.com

# USING MEDIATION

---------------------- *Instead of Litigation in* ----------------------

# EMPLOYMENT LAW ISSUES

Mediation can be an effective tool for settling a variety of legal disputes.  It is especially beneficial when it comes to sorting out employment law issues.  Unlike disputes that involve personal injury or domestic issues, those related to employment law often involve people who benefit from preserving their relationship.  Whether there are contract issues between a company and a client or an employer and employee face a challenge that seems impossible to overcome, mediation prevents many of the difficulties that arise during litigation.  It allows two opposing parties to repair their relationship and move forward, which can be extremely beneficial in the workplace.



What are some of the industries in which mediation can be used to settle an employment law dispute?

- Service
- Wholesalers
- Retailers
- Construction
- Hotel and restaurant
- Transportation
- Air cargo
- Manufacturing

## PAUL I. WEINER
*ATTORNEY AND MEDIATOR*

973-455-0026 | weineremploymentlaw.com

# USING MEDIATION

--------------------- *Instead of Litigation in* ---------------------

# EMPLOYMENT LAW ISSUES

Ideally, businesses will create policies that avoid conflict with employees. Unfortunately, this is not always the case and not all employees view a situation as fair or ethical.  In these instances, grievances can escalate into serious legal battles quickly. Mediation offers employees and employers an alternative to litigation.

What are some of the employment law issues that can be settled through mediation?

## Mediation to Settle Wage and Hour Law Issues

Disputes over the wages an employee is paid and the hours he or she works are common. They can arise from a multitude of scenarios including timeliness of paid earnings, overtime, lunch and break times, accuracy of vacation, sick, and personal pay, work preparations and various other expenses.



Disputes can also arise regarding overtime pay, especially when it involves a complex system that includes half-time and double-time payments.  Not only are there state and federal laws that must be followed regarding overtime, employers must also ensure employees are treated fairly and with respect.

No workplace is perfect, but when an employee feels he or she is being overworked or not compensated properly, action can and should be taken.  The same is true if an employer feels an employee is taking advantage of a situation and would like to address work habits.  Mediation provides a safe, controlled environment in which to discuss these issues and come to a resolution that makes it possible to continue the relationship.

## Mediation to Settle Severance Pay Issues

When an employee is asked to leave a company by his or her employer, severance pay might be provided.  Not only could disputes arise concerning the amount of a severance package, there could also be issues related to insurance coverage and other benefits.

PAUL I. WEINER
*ATTORNEY AND MEDIATOR*

973-455-0026 | weineremploymentlaw.com

# USING MEDIATION

---------------------- *Instead of Litigation in* ----------------------

# EMPLOYMENT LAW ISSUES

Likewise, if an employee feels he or she was wrongfully dismissed, severance pay might factor into the evidence for or against the accusations. Severance packages can also include documents requesting employees not behave in certain ways once their relationship with their current company has ended. Requests might include non-compete agreements, non-disclosure agreements, and other legally binding documents, all of which are sometimes a point of contention that can be settled during a mediation session.

## Mediation to Settle Common Human Resources Issues

Human Resources (HR) departments often turn to mediation when a dispute arises with an employee. HR understands how important it is to protect the company for which they work, but also realizes it is in everyone's best interest to settle a legal issue quickly and fairly. And because mediation is confidential, all issues are kept out of the public eye, which can be extremely beneficial for all parties involved.

What are some of the HR issues that can be settled through mediation?

- Performance review issues
- Discrimination issues
- Harassment issues
- Issues with the Americans with Disabilities Act
- Health issues directly related to employees and to their family members - Family Medical Leave Act (FMLA)
- Issues related to drug and alcohol abuse in the workplace
- Issues related to hiring, firing, leaves of absence and absenteeism in general



# USING MEDIATION

---------------------- *Instead of Litigation in* ----------------------

# EMPLOYMENT LAW ISSUES

## How to Determine if Mediation is Your Best Option for Settling Your Workplace Dispute

Mediation is growing in popularity. Both employers and employees appreciate the benefits related to using mediation to settle a dispute. It is less expensive, takes less time, and in many cases, makes it possible to continue a professional relationship. Deciding when to attempt mediation and when to proceed directly to litigation can be challenging.



In most cases, attempting mediation is worth it. If both parties involved in an employment law dispute are willing to discuss the issue at hand, a skilled mediator might be able to help them reach a resolution – even if one seems impossible at the start of the process. However, if one or both parties is unwilling to compromise and does not want to discuss the issue, reaching a resolution through mediation is unlikely.

Finding a skilled mediator to assist with workplace mediation is one of the keys to achieving success. Paul Weiner has worked with both employees and businesses, which means he has a unique perspective not found in other mediators. He is able to see the issue from both sides, making it easier for him to help disputing parties do the same. He fully understands both sides' techniques, strategies and tactics. He is able to interpret changes in cases dynamically and intuitively, and structure an approach that suits the situation.

If you are involved in a workplace dispute in New York or New Jersey, or you would like to discuss employment law issues in either state, contact Paul at (973) 455-0026 or by email at piw@weinerattorney.com.

## Download This Ebook
https://toi.infusionsoft.com/app/form/paul-weiner-ebook

## PAUL I. WEINER
### ATTORNEY AND MEDIATOR

973-455-0026 | weineremploymentlaw.com

# EXHIBIT
# "I"



Case 1:13-cv-07421-GBD-GWG Document 2 Filed 10/21/13 Page 115 of 149

HOME | FIRM OVERVIEW | ATTORNEYS | CONTACT | PRESS RELEASES    Call Joshua @ 973 631 6020 or 973 615 6666

LAW OFFICES OF

# WEINER & WEINER

*EMPLOYMENT & LABOR ATTORNEYS*

## REPRESENTING EMPLOYERS & EMPLOYEES

Serving Clients in New Jersey & New York

 Employment Law ·     Labor Law ·     OSHA ·

### Paul I. Weiner and Joshua L. Weiner

**Formerly members of Law Offices of Weiner & Weiner LLC,**

**are pleased to announce they have joined**



## Coughlin Duffy LLP

www.coughlinduffy.com

350 Mount Kemble Ave – Morristown, NJ 07902

85 Pine Street 28th floor, Wall Street Plaza – New York, NY 10005

Phone (212) 483-0105

If you or your organization is working through an employment or labor law issue, experienced counsel is crucial in reaching a resolution that preserves your best interests. We at Coughlin Duffy LLP, have more than 50 years of combined experience in the field serving small and large companies, as well as employees. As such, we are prepared for even the most complex employment, labor, employment law or OSHA issues. We are able to work directly with clients to fully understand their issues. From there, we can apply our knowledge of various industry dynamics to reach practical solutions as efficiently and effectively as possible. We are prepared to represent clients in industries including:

- Service
- Wholesalers
- Retailers
- Construction
- Hotel and restaurant
- Transportation
- Air cargo
- Manufacturing

Depending on client need, our lawyers are prepared to offer solutions that include:

- Alternative dispute resolution
- Administrative and arbitration proceedings
- Litigation
- Preventative practices
- Management training
- Negotiated settlements

Because we represent both businesses and employees, we have a perspective that firms that solely represent one side do not have. We fully understand both sides' techniques, strategies and tactics. We are able to interpret changes in cases dynamically and inventively and structure our approach accordingly. If you have any questions, please call without any obligation, and we will be happy to discuss your problems or issues free of charge. In our years of experience in dealing with employers and employees, we have always focused on not just legal advice, but tailored, practical advice. We are also prepared to represent clients in New York from our New York Office. To schedule a free initial phone consultation to discuss a New Jersey labor or employment law issue with one of our employment law attorneys, call us 973-631-6020 or 973-615-6666 or email the firm.

### Contact Today

**Contact Today**
For Experienced Legal Assistance

Name (required)

Email address (required)

Phone (required)

Brief description of your legal issue (required)

Type the characters (required)

y ß y k j

**Get Help Today!**

### Firm Information

**Coughlin Duffy LLP**
www.coughlinduffy.com
350 Mount Kemble Avenue
Morristown, NJ 07962
NJ Office: (973) 267-0058
NY Office: (212) 483-0105
Map and Directions

Call Joshua Weiner or Paul Weiner for a Free
Initial Phone Consultation

## REPRESENTING EMPLOYERS & EMPLOYEES

Coughlin Duffy LLP represent clients throughout New Jersey and New York
All rights reserved. Disclaimer | Site Map



REPRESENTING EMPLOYERS & EMPLOYEES

Coughlin Duffy LLP represent clients throughout New Jersey and New York.
All rights reserved. Disclaimer | Site Map

# EXHIBIT
## "J"



Careers    A Note of Thanks    **SEARCH SITE** ▶

Attorneys    Services    **News & Events**    About Us    Contact Us



News Article

News

## Joshua L. Weiner and Paul I. Weiner Join Coughlin Duffy LLP

April 24, 2019

Coughlin Duffy LLP is pleased to announce that Joshua L. Weiner and Paul I. Weiner will join the Firm on May 1, 2019. Joshua Weiner will join as a Partner and Chair of the Employment and Labor Practice Group. Paul Weiner will serve as Special Counsel to the Firm.

With over 50 years of combined experience in employment and labor law, Joshua Weiner and his father, Paul Weiner, represent small to large companies for their employment law needs. Both Joshua and Paul work closely with their clients in litigated matters as well as administrative and arbitration proceedings, employment law preventive practices and audits, labor union law disputes, wage and hour claims, and management training.

Prior to joining Coughlin Duffy LLP, Mr. Joshua Weiner served as Chair of the Employment and Labor Law practice group and the Litigation Division at Budd Larner. Mr. Weiner received his J.D. from the Hofstra University School of Law, and earned his B.A. from Rutgers University.

Mr. Paul Weiner served as Counsel, as well as a private and court mediator at Budd Larner. He received his J.D. from Brooklyn Law School. Paul also served as Labor and Employment counsel for large corporations including Nabisco, GAF and Certain Teed Products. Over the last 20 years, Paul has practiced with various law firms in New Jersey, as well as established his own firm alongside Joshua, specializing in employment and labor law. Paul's practice at Coughlin Duffy will focus on employment and labor law, OSHA, as well as private and court mediation.

"Coughlin Duffy is proud to welcome Joshua and Paul to our growing team of talented attorneys and is pleased to add employment and labor to the list of services we are able to provide our clients. Both Joshua and Paul have been recognized and admired for their many achievements and exceptional expertise. We are confident that they will each contribute to the Firm's strength of providing the highest quality legal services and value to our clients." Remarked, Coughlin Duffy LLP Managing Partner Suzanne C. Midlige.

**Related Professionals**
Joshua L. Weiner
Paul I. Weiner

Disclaimer   Site Map   © Copyright 2019 Coughlin Duffy LLP
Website designed and developed by Greenfield/Belser Ltd.

in  f  ⟨



**Coughlin Duffy** LLP

News

# Joshua L. Weiner and Paul I. Weiner Join Coughlin Duffy LLP

April 24, 2019

Coughlin Duffy LLP is pleased to announce that Joshua L. Weiner and Paul I. Weiner will join the Firm on May 1, 2019. Joshua Weiner will join as a Partner and Chair of the Employment and Labor Practice Group. Paul Weiner will serve as Special Counsel to the Firm.

With over 50 years of combined experience in employment and labor law, Joshua Weiner and his father, Paul Weiner, represent small to large companies for their employment law needs. Both Joshua and Paul work closely with their clients in litigated matters as well as administrative and arbitration proceedings, employment law preventive practices and audits, labor union law disputes, wage and hour claims, and management training.

Prior to joining Coughlin Duffy LLP, Mr. Joshua Weiner served as Chair of the Employment and Labor Law practice group and the Litigation Division at Budd Larner. Mr. Weiner received his J.D. from the Hofstra University School of Law, and earned his B.A. from Rutgers University.

Mr. Paul Weiner served as Counsel, as well as private and court mediator at Budd Larner. He received his J.D. from Brooklyn Law School. Paul also served as Labor and Employment counsel for large corporations including Nabisco, GAF and Certain Teed Products. Over the last 20 years, Paul has practiced with various law firms in New Jersey, as well as established his own firm alongside Joshua, specializing in employment and labor law. Paul's practice at Coughlin Duffy will focus on employment and labor law, OSHA, as well as private and court mediation.

"Coughlin Duffy is proud to welcome Joshua and Paul to our growing team of talented attorneys and is pleased to add employment and labor to the list of services we are able to provide our clients. Both Joshua and Paul have been recognized and admired for their many achievements and exceptional expertise. We are confident that they will each contribute to the Firm's strength of providing the highest quality legal services and value to our clients." Remarked, Coughlin Duffy LLP Managing Partner Suzanne C. Midlige.





# Paul I. Weiner

Special Counsel

pweiner@coughlinduffy.com

Direct (973) 631-6057
Fax (973) 267-6442

Paul I. Weiner is Special Counsel to the Firm.

Paul is an accomplished Employment and Labor attorney and has been practicing in the industry for over 50 years. He concentrates his practice in the areas of Employment and Labor Law as well as private and court mediation. Paul's practical experience and legal know-how provide unique opportunities for employers in both the prevention of legal complications as well as in providing guidance and representation in legal matters when they arise. Paul also assists employers in dealing with and preventing unions.

Over the last 20 years, Paul has practiced with various law firms in New Jersey specializing in employment and labor law, as well as established his own employment and labor firm the Law Offices of Weiner & Weiner, alongside his son Joshua Weiner, Coughlin Duffy's Chair of Employment and Labor group. He also served as an in-house Corporate Labor and Employment Counsel for such establishments as Nabisco Brands and GAF.

Paul is also a well-known speaker in the field of Employment and Labor law and for 30 years served as the Chair of the highly regarded Employment Litigation program for the Practicing Law Institute (PLI). He has written articles for many of the most well respected legal publications and is a co-author of the best-selling text *Wrongful Termination A Preventative Approach* (1st and 2nd Edition). Paul has also been a guest speaker on CBS News, MSNBC, Channel 12 news, and numerous radio talk shows. He has been quoted in the NY Times, the Star Ledger, the Bergen Record, New Jersey Law Journal, and other news publications.

## Services

Employment and Labor Law

## Education

Brooklyn Law School (J.D., 1967)

Brooklyn College (B.A., 1964)

## Professional Admissions

United States Supreme Court (2002)

United States Court of Appeals Third Circuit (1998)

United States Court of Appeals Seventh Circuit (1987)

United States District Court for the Southern District of New York (1969)

United States District Court for the Eastern District of New York (1969)

United States District Court for the Eastern and Western Districts of Pennsylvania (1998)

State of New Jersey (1987)

State of Pennsylvania (1975)

State of New York (1968)

## Experience

- Leading Sexual Harrasment Decision
- Toys-R-Us v. Drug Testing Henessey in Eagle Coastal Refinery
- Subcarrier Communs v. Day Superior Court of New Jersey
- Lehmann v. Toys 'R' Us
- 1993 N.J. Hennesey v. Coastal Eagle Point Oil Co.

## Speaking Engagements

Speaker, N.J. CLE course on employee handbooks and employment discrimination (1978-2000)

## Publications and Presentations

Standard Setting Procedures, Variances under the Occupation Safety & Health Act of 1970; PLI's Occupational Safety and Health Law

A Practical Guide to an Effective Role in OSHA's Standard Setting Process; PLI's Occupational Safety and Health Law

Variance Under OSHA – An Update; PLI's Occupational Safety and Health Law

Seniority Systems In The Post Teamsters Era – An Update; PLI's Employment Discrimination Litigation

OSHA's Standard Setting Process; PLI's Occupational Safety and Health Law

The Handling of an EEO Charge; PLI's EEOC Litigation

Employee Surveys a Step-By-Step Approach; PLI's EEOC Litigation

Paul I. Weiner

Legal Consideration In General; PLI's Age Discrimination Problems, The Context of a Reduction in Workforce

Statistical Techniques in Age Cases; PLI's Employment Litigation and Its Alternatives

Managing Outside Counsel in Employment Litigation; PLI's Employment Litigation

Safety Strikes & NLRA Issues, Handling Investigation and Court Precedent; PLI's OSHA, Discrimination Provision

Pre-Litigation Settlement Strategies; PLI's Employment Litigation

Involuntary Reductions in Force, A Step-By-Step Approach; PLI's Reduction in Workforce and Benefits in a Shrinking Economy

Litigation Risk Audit for Today's Employers; PLI's Employment Litigation

Statistical Techniques in Age Cases; PLI's Employment Litigation

Related Tort Claims; PLI's Employment Discrimination Litigation

The Handling of an EEO Charge; PLI's Employment Discrimination Litigation

Trial Strategy and Preparation in Employment Litigation; PLI's Litigating Employment Discrimination Cases

Defending A Company's Reasonable Accommodation under an ADA Case; PLI's Litigating Employment Discrimination Cases

Stress and Mental Disorder; New Responsibilities for Employers under the ADA. PLI's Litigating; Employment Discrimination Cases

The Settlement of Discrimination Cases; PLI's Litigating Employment Discrimination Cases

Personnel Law Updates

Your Employee Handbook from a Legal Perspective; Personnel Law Update

Downsizing – Legal Aspects of Work Force Reduction; Personnel Law Update

How to Write Warnings and Performance Appraisals in a Legal Context; Personnel Law Update

Employers Behind Bars – A Touch New OSHA Raises the Stakes; Personnel Law Update

A Litigation Risk Audit for Today's Employer: From Application Form to Exit Interview; Personnel Law Update

Emerging Areas of Employer Liability; Personnel Law Update

Council on Education in Management Emerging Areas of Employer Liability; Personnel Law Update

Other

The Wooley Decision/Are Handbooks Employment Comments; Commence and Industry

Legal Issues in the Next Millennium Society of Human Resource Manager (1998)

Preventing Union in Today's Economy; SHRM (1997)

## Awards and Honors

Selected for inclusion in New Jersey Super Lawyers – Employment & Labor Law (2007)

Recipient, Corporate Clients Choice Award, American Lawyer Magazine (1995)

## Memberships

Program Chair, New Jersey State Bar Association

Program Chair, Practicing Law Institute

Program Chair, American Bar Association

Chairman and Founder, PLI Employment Discrimination Litigation Seminar

Chairman, "Employment Discrimination Seminars", PLI, 1978 - 2012

Chairman, Employment Law Council

Member, American Bar Association Equal Employment Opportunity Committee

Member, American Bar Association, Employment/Labor Law Committee

Member, New Jersey State Bar Association Labor Committee

Arbitrator, New Jersey State Board of Mediation

Mediator, New Jersey and Federal Courts

## News

**Joshua L. Weiner and Paul I. Weiner Join Coughlin Duffy LLP**
April 24, 2019



**Coughlin Duffy** LLP



# Joshua L. Weiner
Partner

jweiner@coughlinduffy.com

350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962
Direct (973) 631-6020
Fax (973) 267-6442

Joshua L. Weiner is a Partner and Chair of the Firm's Employment & Labor Law group.

Joshua has significant experience in employment and labor law representing small to large companies for their employment law needs. Joshua works closely with clients in litigated matters as well as administrative and arbitration proceedings, employment law preventive practices and audits, labor union law disputes, wage and hour claims, and management training.

Prior to joining Coughlin Duffy LLP, Joshua served as Chair of the Employment and Labor Law practice group and the Litigation Division at Budd Larner. Joshua also practiced at the Law Offices of Weiner and Weiner, an employment and labor law firm co-owned with his father Paul Weiner, Special Counsel to Coughlin Duffy.

Joshua received his J.D. from the Hofstra University School of Law, and earned his B.A. from Rutgers University.

### REPRESENTATIVE MATTERS

- Represented both employers and employees dealing with claims of discrimination, harassment, whistleblower retaliation, wage and hour disputes, defamation and invasion of privacy, as well as, corporate disputes with employees over executive compensation, employment contracts, restrictive covenants such as non-compete clauses, non-disclosures and confidentiality agreements
- Represented employers and management in various labor disputes, unfair labor practice charges, arbitrations and negotiations with the unions
- Serves as employment and labor counsel to employers in a wide variety of industries, providing counseling and training

on a variety of issues, including discrimination, whistleblower retaliation, sexual harassment, wage and hour audits, employee handbooks, personnel policies, employment contracts, restrictive covenants, hiring and termination practices and union relations

## Services
Commercial Litigation
Employment and Labor Law

## Education
Hofstra University School of Law (J.D., 2006)
Rutgers University (B.A., 2003)

## Professional Admissions
United States District Court for the District of New Jersey (2007)
United States District Court for the Southern District of New York (2008)
State of New Jersey (2007)
State of New York (2008)

## Publications and Presentations
Author, "A Brief Treatise on Punitive Damages Under Title VII and Will the Supreme Court's Recent Holding in Crawford End Up Derailing the Ellerth/Faragher Affirmative Defense in Sexual Harassment Cases," Practicing Law Institute's Litigation Employment Discriminations Claims Seminar (2009)

Author, "Disparate Impact and Disparate Treatment/Legal Update and Practical Guide," Practicing Law Institute's Litigation Employment Discriminations Claims Seminar (2008)

Author, "Recent Supreme Court Decisions Impacting on Title VII and §1983 Jurisprudence," Practicing Law Institute's Litigation Employment Discriminations Claims Seminar (2007)

## Awards and Honors
New Jersey *Super Lawyer*'s Rising Star (2018 - 2019)

## Memberships
Member, New Jersey State Bar Association

Member, Morris County Bar Association

Member, Sidney Reitman Inn of Court

## News
**Joshua L. Weiner and Paul I. Weiner Join Coughlin Duffy LLP**
April 24, 2019

# EXHIBIT
# "K"



("Separation Page for")
# EXHIBIT
## "K"

 Q Search  

Try Premium Free
for 1 Month

**Hudson Valley IT Support** - Dutchess County Area Computer, Server, & Network Sales and support.





Connect   More...

Lisa, explore relevant opportunities with
Marotta Controls, Inc.

Follow

## Joshua L. Weiner

Partner and Chair of Employment and Labor Practice at
Coughlin Duffy LLP

Greater New York City Area · 69 connections · **Contact info**

Coughlin Duffy LLP

Hofstra University School of
Law

People Also Viewed

 **Sonya Longo**
Partner at Budd Larner, P.C.

 **Deanna Lee**
Summer Law Clerk at Coughlin Duffy
LLP

### About

Significant experience in employment and labor law representing small to large companies for their employment law
needs. Work closely with clients in litigated matters as well as administrative and arbitration proceedings, employment
law preventive practices and audits, labor union law disputes, wage and hour claims, and management training.

**Michael Chuven**
Shareholder at Kinney Lisovicz Reilly &
Wolff PC

**Jennifer Critchley**
Partner at Connell Foley LLP

### Experience

 **Partner and Chair of Employment and Labor Practice**
Coughlin Duffy LLP
May 2019 – Present · 3 mos

 **Chris Anton**
Counsel at Gibbons P.C.

**Linda Kobryn**
Accounting / Billing Specialist at
Connell Foley

**Chair of the Employment and Labor Law Group**
Budd Larner
Mar 2016 – Apr 2019 · 3 yrs 2 mos
Short Hills, NJ

**Louis Weinstein**
Shareholder at Budd Larner

**Co-Owner**
The Law Offices of Weiner & Weiner
May 2009 – Aug 2015 · 6 yrs 4 mos
Morristown, NJ

 **Steven Luckner**
Attorney advising employers on all
aspects of employment law nationwide

**Michael F. Harrison**
Executive Director at Saiber LLC

### Education

**Hofstra University School of Law**
Doctor of Law · JD
2003 – 2006

**Susan Angiono**
Administrative Assistant at Budd Larner
PC

Learn the skills Joshua L. has

**Rutgers University**
B A, Biochemistry
1998 – 2002

Hiring, Managing, and
Separating from Employees
Viewers: 20,961

Human Resources:
Understanding HR Systems
Features and Benefits
Viewers: 37,505

### Skills & Endorsements

**Labor and Employment Law** · 1

David Timpanaro has given an endorsement for this skill

Human Resources:
Protecting Confidentiality
Viewers: 5,523



See more   Messaging · 1

# EXHIBIT
## "L"



About Us
Practice Areas
Professionals
News & Events
Publications
Careers
Contact Us

**What's New+**

**Upcoming Seminars+**

Budd Larner is sad to announce that after 85 years of servicing clients and contributing towards shaping New Jersey's legal landscape, Budd Larner will be ceasing operations later this month. If you have any questions, please contact Mitchell Rait - mrait@buddlarner.com (862) 289-4311

**What's New**
**Upcoming Seminars**

© 2019 Budd Larner P.C.

SitemapDisclaimer

Website by Herrmann Advertising | Branding | Technology

# EXHIBIT
# "M"





**Joshua L. Weiner**
*Shareholder*

Short Hills
Phone: 973-315-4499
Fax: 973-379-7734
Jweiner@buddlarner.com

**Practice Areas**

- Labor & Employment

# JOSHUA L. WEINER

Joshua L. Weiner is a Shareholder in the Short Hills, N.J. office of Budd Larner, PC.  He is Chair of the firm's Employment & Labor Law practice group and the litigation division. He concentrates his practice in the areas of Employment & Labor Law.

**Representative Matters:**

- Represented both employers and employees dealing with claims of discrimination, harassment, whistleblower retaliation, wage and hour disputes, defamation and invasion of privacy, as well as, corporate disputes with employees over executive compensation, employment contracts, restrictive covenants such as non-compete clauses, non-disclosures and confidentiality agreements
- Represented employers and management in various labor disputes, unfair labor practice charges, arbitrations and negotiations with the unions
- Serves as employment and labor counsel to employers in a wide variety of industries, providing counseling and training on a variety of issues, including discrimination, whistleblower retaliation, sexual harassment, wage and hour audits, employee handbooks, personnel policies, employment contracts, restrictive covenants, hiring and termination practices and union relations

**Joshua L. Weiner**

**Education**

- Hofstra University School of Law (J.D.)
- Rutgers University (B.A.)

**Bar Admissions**

- New Jersey, 2007
- New York, 2008
- U.S. District Court of New Jersey, 2007

- U.S. District Court, Southern District of New York, 2008

**Professional Activities**

- Member, New Jersey State Bar Association
- Member, Morris County Bar Association
- Member, Sidney Reitman Inn of Court

**Articles/Publications**

- Author, *Recent Supreme Court Decisions Impacting on Title VII and §1983 Jurisprudence*, Practicing Law Institute's Litigation Employment Discriminations Claims Seminar, (2007)
- Author, *Disparate Impact and Disparate Treatment/Legal Update and Practical Guide*, Practicing Law Institute's Litigation Employment Discriminations Claims Seminar, (2008)
- Author, *A Brief Treatise on Punitive Damages Under Title VII and Will the Supreme Court's Recent Holding in Crawford End Up Derailing the Ellerth/Faragher Affirmative Defense in Sexual Harassment Cases*, Practicing Law Institute's Litigation Employment Discriminations Claims Seminar, (2009)

© 2019 Budd Larner P.C. All Rights Reserved.

7/30/2019, 11:35 AM

# EXHIBIT

# "O"





**Paul I. Weiner**
*Counsel*

Short Hills
Phone: 973-315-4542
Fax: 973-379-7734
Pweiner@buddlarner.com

**Practice Areas**

- Labor & Employment

# PAUL I. WEINER

Paul I. Weiner is of Counsel in the Short Hills, N.J. office of Budd Larner, PC and a member of the firm's Employment & Labor Law practice group. He concentrates his practice in the areas of Employment & Labor Law as well as private and court mediation.

Mr. Weiner's practical experience and legal know-how provide unique opportunities for employers in both the prevention of legal complications as well as in providing guidance and representation in legal matters when they arise. Mr. Weiner also assists employers dealing with and preventing unions.

### Education

- Brooklyn Law School (J.D.)

### Bar Admissions

- New Jersey, 1987
- Pennsylvania, 1975
- New York, 1968
- U.S. District Court, Southern District of New York
- U.S. District Court, Eastern District of New York
- U.S. District Court for the Eastern and Western Districts of Pennsylvania
- U.S. Supreme Court
- U.S. Court of Appeals Third and Seventh Circuit

### Professional Activities

- Speaker, N.J. CLE course on employee handbooks
- Selected for inclusion in New Jersey Super Lawyers – Employment & Labor Law, 2007
- Recipient, Corporate Clients Choice Award, American Lawyer Magazine, 1995
- Program Chair, New Jersey State Bar Association
- Program Chair, Practicing Law Institute
- Program Chair, American Bar Association
- Chairman and Founder, PLI Employment Discrimination Litigation Seminar
- Chairman, "Employment Discrimination Seminars", PLI, 1978 - 2012
- Chairman, Employment Law Council
- Member, American Bar Association Equal Employment Opportunity Committee
- Member, American Bar Association, Employment/Labor Law Committee
- Member, New Jersey State Bar Association Labor Committee
- Arbitrator, New Jersey State Board of Mediation
- Mediator, New Jersey and Federal Courts

### Articles/Publications

Standard Setting Procedures, Variances under the Occupation Safety & Health Act of 1970; PLI's Occupational Safety and Health Law

A Practical Guide to an Effective Role in OSHA's Standard Setting Process; PLI's Occupational Safety and Health Law

Variance Under OSHA – An Update; PLI's Occupational Safety and Health Law

Seniority Systems In The Post Teamsters Era – An Update; PLI's Employment Discrimination Litigation

OSHA's Standard Setting Process; PLI's Occupational Safety and Health Law

The Handling of an EEO Charge; PLI's EEOC Litigation

Employee Surveys a Step-By-Step Approach; PLI's EEOC Litigation

Legal Consideration In General; PLI's Age Discrimination Problems, The Context of a Reduction in Workforce

Statistical Techniques in Age Cases; PLI's Employment Litigation and Its Alternatives

Managing Outside Counsel in Employment Litigation; PLI's Employment Litigation

Safety Strikes & NLRA Issues, Handling Investigation and Court Precedent; PLI's OSHA, Discrimination Provision

Pre-Litigation Settlement Strategies; PLI's Employment Litigation

Involuntary Reductions in Force, A Step-By-Step Approach; PLI's Reduction in Workforce and Benefits in a Shrinking Economy

Litigation Risk Audit for Today's Employers; PLI's Employment Litigation

Statistical Techniques in Age Cases; PLI's Employment Litigation

Related Tort Claims; PLI's Employment Discrimination Litigation

The Handling of an EEO Charge; PLI's Employment Discrimination Litigation

Trial Strategy and Preparation in Employment Litigation; PLI's Litigating Employment Discrimination Cases

Defending A Company's Reasonable Accommodation under an ADA Case; PLI's Litigating Employment Discrimination Cases

Stress and Mental Disorder; New Responsibilities for Employers under the ADA.  PLI's Litigating; Employment Discrimination Cases

The Settlement of Discrimination Cases; PLI's Litigating Employment Discrimination Cases

Personnel Law Updates

Your Employee Handbook from a Legal Perspective; Personnel Law Update

Downsizing – Legal Aspects of Work Force Reduction; Personnel Law Update

How to Write Warnings and Performance Appraisals in a Legal Context; Personnel Law Update

Employers Behind Bars – A Touch New OSHA Raises the Stakes; Personnel Law Update

A Litigation Risk Audit for Today's Employer: From Application Form to Exit Interview; Personnel Law Update

Emerging Areas of Employer Liability; Personnel Law Update

Council on Education in Management Emerging Areas of Employer Liability; Personnel Law Update

Other

The Wooley Decision/Are Handbooks Employment Comments; Commence and Industry

Legal Issues in the Next Millennium Society of Human Resource Manager; 1998

Preventing Union in Today's Economy; SHRM, 1997

© 2019 Budd Larner P.C. All Rights Reserved.

# EXHIBIT
# "P"

119 F.Supp.2d 424 (2000)

### Angela DEAN, Plaintiff,

v.

### WESTCHESTER COUNTY DISTRICT ATTORNEY'S OFFICE, Jeanine Pirro, District Attorney for Westchester County, Francis T. Donohue, Chief Assistant District Attorney, and Paul Scharf, Assistant District Attorney, Defendants.

No. 00 CIV. 3317(WCC).

**United States District Court, S.D. New York.**

November 3, 2000.

426 *425 *426 Weiner & Katz, L.L.C., Livingston, NJ (Paul I. Weiner, of counsel), for Plaintiff.

Alan D. Scheinkman, Westchester County Attorney, White Plains, NY (Joseph F. Berrafati, Lissette M. Figueroa, Asst. County Attorneys, Kyle C. McGovern, Sr. Asst. County Attorney, of counsel), for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Angela Dean, an African-American woman, brings the instant action against defendants Westchester County District Attorney's Office, Jeannine Pirro, District Attorney for Westchester County, Francis T. Donohue, Chief Assistant District Attorney, and Paul Scharf, Assistant District Attorney, pursuant to Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII") and N.Y. Executive Law § 290 *et. seq.* Plaintiff, an attorney, alleges that because of her race and gender, she was harassed, constructively discharged, subjected to intentional infliction of emotional distress and ultimately discharged in retaliation for her complaints about such treatment. Defendants now move to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim. For the foregoing reasons, defendants' motion is granted.

## BACKGROUND

The relevant facts, as alleged in plaintiff's complaint, are as follows:

Plaintiff, a graduate of Villanova University School of Law, began working for defendant Westchester County District Attorney's Office as an Assistant District Attorney in September 1997. She was initially assigned to the Appeals and Special Litigation Division where she handled motions in felony cases. (Complt.¶¶ 10-11.) On November 22, 1998 she was promoted to the Local Criminal Court Bureau where her new job responsibilities included trying cases and making court appearances. (*Id.* ¶¶ 12-13.) After the promotion, plaintiff did not receive any training or supervision in connection with the new job. (*Id.* ¶ 14.)

On December 4, 1998 plaintiff reviewed the files in the case of *People v. Peter Nigro* and became aware that the trial had been adjourned several times and that no action by the District Attorney's Office had been taken in the case. Although plaintiff requested another adjournment, the judge refused and set a trial date for January 6, 1999. At that time, defendant Scharf, concerned that the number of adjournments charged against the District Attorney's Office would ultimately result in dismissal, attempted to contact the judge to discuss his concerns, but without success. He then informed plaintiff, in a "very cursory manner," that he wanted to review all of her files. (Complt., Ex. A.) No further instruction or assistance was given to plaintiff in her preparation for trial of the *Nigro* case. (*Id.*)

427 *427 On January 6, 1999 the *Nigro* case was dismissed due to the number of adjournments. (*Id.*) Plaintiff alleges that Scharf brought her to tears (*Id.*) when he told her: that the dismissal was due to her own negligence (Complt.¶ 17); that

# EXHIBIT
# "Q"

(2008)

**NEW JERSEY BUILDING LABORERS' DISTRICT COUNCILS and LOCAL 325, LIUNA, Petitioners,**

v.

**MOLFETTA INDUSTRIES CO., INC. and MOLFETTA CONSTRUCTION CO., Respondents.**

<u>Civ. No. 08-02756.</u>

**United States District Court, D. New Jersey.**

August 13, 2008.

KROLL HEINEMAN, LLC, Raymond G. Heineman, Esq., Metro Corporate Campus I, Iselin, New Jersey, Attorneys for Plaintiff.

LAW OFFICES OF PAUL I. WEINER, Paul I. Weiner, Esq., Livingston, New Jersey, Attorneys for Defendant.

# OPINION

DICKINSON R. DEBEVOISE, District Judge.

Plaintiffs, New Jersey Building Labors' District Councils and Local 325, Laborers' International Union of North America (collectively, the "Union"), commenced this action on June 4, 2008, petitioning to confirm a grievance arbitration award, pursuant to Section 301 of the Labor-Management Relations Act of 1947 (the "Taft-Hartley Act"), 29 U.S.C.A. § 185. They sought enforcement of a labor arbitration award, of Arbitrator Gerard Restaino (the "Arbitrator"). The award resolved a dispute between the Union and Defendants, Molfetta Industries, Co. Inc., and Molfetta Construction Co. (collectively "Molfetta"), regarding the applicability of a collective bargaining agreement to the Jackson and Observer Highway job site, on which Molfetta Construction worked in 2007 without Union laborers. Molfetta filed a petition on June 25, 2008, seeking to vacate the arbitration award. Because the Court has no common law or statutory grounds on which it can overturn the arbitrator's award, the arbitration award is confirmed.

# I. BACKGROUND

1. The CBA: On December 13, 2002, Molfetta president, Michael Nirchio, signed a statewide collective bargaining agreement with the Union (the "CBA") on behalf of Molfetta Industries. On March 5, 2003 he signed a short form agreement on behalf of Molfetta Construction which, by reference, incorporated the terms and provisions of the CBA.

The CBA states that Molfetta must offer the Union the first opportunity to furnish laborers and apprentices for its contract work throughout New Jersey before proceeding to hire from other sources. It states that its terms are applicable at any work site under Molfetta's name or

> . . . under the name of another entity (whether a corporation, company, partnership, joint venture, or any other business entity) where the Employer, including its owners, stockholders, officer, directors, or partners, exercise either directly or indirectly (such as through family members or company employees) any significant degree of ownership, management or control . . .

The CBA provides that the "relationship between the parties is fully and exclusively set forth by [the CBA], and no other means, oral or written." Its arbitration clause states that any grievance or dispute involving the interpretation or application of the CBA should be submitted to the New Jersey State Board of Mediation for final and binding arbitration. Finally, the CBA contains an "escape" clause which states that the CBA continues in full force and effect after April 30, 2007, the termination date, unless a signatory who desires to open negotiations expresses intention to do so ninety days before the termination date, or thirty days before April 30th of each succeeding year.

Molfetta contends that the above provisions do not apply to Molfetta Construction. Specifically, Molfetta alleges that

# EXHIBIT

# "R"

**ROBIN DAGHLIAN CURASCO, Plaintiff,**

v.

**GERALD CALABRESE, et. al., Defendants.**

Civil Action No. 2:15-3963 (CCC).

**United States District Court, D. New Jersey.**

July 27, 2016.

ROBIN DAGHLIAN CURASCO, Plaintiff, represented by JAMISON MICHAEL MARK, MARK & GALUSHA, LLC.

SERCAN ZOKLU, Defendant, represented by JOSHUA LAWRENCE WEINER, Budd Larner PC.

PAUL FAVIA, Defendant, represented by JOSHUA LAWRENCE WEINER, Budd Larner PC.

BOROUGH OF CLIFFSIDE PARK, Defendant, represented by JOSHUA LAWRENCE WEINER, Budd Larner PC.

## OPINION

CLAIRE C. CECCHI, District Judge.

## I. INTRODUCTION

This matter comes before the Court on the motion [ECF No. 12] of Defendants Borough of Cliffside Park (the "Borough") and Sercan Zoklu ("Zoklu") (collectively, "Borough Defendants" or "Defendants") to dismiss several counts of the first Amended Complaint [ECF No. 6] of Plaintiff Robin Daghlian Curasco ("Plaintiff") as against them, pursuant to federal Rule of Civil Procedure 12(b)(6). The Court decides the motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Borough Defendants' partial motion to dismiss is granted in part and denied in part: Counts I, II, IV, V, VI, X, XV, XVIII, and XIX of Plaintiffs' first Amended Complaint as against the Borough Defendants are dismissed without prejudice.

## II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff's action arises from the events surrounding her termination by the Borough, after she allegedly complained about sexual harassment by her colleagues. See generally First Amended Complaint ("Am. Compl."), ECF No. 6. The Borough hired Plaintiff as an emergency medical technician ("EMT") in 1996. See Am. Compl. ¶ 5. About ten years later, in 2007, Plaintiff experienced unwelcome touching and verbal sexual harassment from her supervisor, which culminated in a sexual assault at her home in 2010. See id. ¶¶ 6, 22, 34. Plaintiff reported the sexual harassment and assault to Defendants Mayor Gerald Calabrese and Zoklu, the Borough Clerk, who promised to investigate. See id. ¶ 41. Plaintiff alleges that Zoklu called Plaintiff into his office the next day and "demanded that Plaintiff turn over the recording which she had made of the assault and grilled her into retelling the facts of the sexual assault." See id. ¶¶ 43-44. She also alleges that Zoklu told her not to file criminal charges against her supervisor, because the Borough would "take care" of the criminal charges itself.[3] See id. ¶¶ 47-48.

Plaintiff retained an attorney, because she "feared for her job as [her complaints of sexual assault] brought potential embarrassment to the Borough. . . ." See id. ¶ 50. She also confided in her family friend, Defendant Mayor Calabrese, who "assured her he would look out for her, and she `would always have a job.'" Id. ¶ 51. Based on the Mayor's assurances, Plaintiff did not complain to anyone outside of the Borough. See id. ¶ 53. Instead, Plaintiff went on a short administrative leave, during which she underwent therapy and counseling. See id. ¶ 56. When Plaintiff returned to work, she frequently inquired into the status of the investigation. See id. ¶ 57.

# EXHIBIT
## "S"

Case 1:19-cv-07115-CBB-OTW   Document 1   Filed 07/30/19   Page 146 of 149

**ROSARIO MEJIA, Plaintiff,**

v.

**ROMA CLEANING, INC., LISBON CLEANING, INC., and JUAN PABLO MEJIA, Defendants.**

Case No. 15-cv-4353 (SJF)(GRB).

**United States District Court, E.D. New York.**

September 25, 2017.

Rosario Mejia, Plaintiff, represented by Ian F. Wallace, Jr., Law Offices of Ian Wallace, PLLC.

Roma Cleaning, Inc., Defendant, represented by Joshua Lawrence Weiner, Budd Larner, P.C. & Paul I. Weiner, Law Offices of Weiner & Weiner LLC.

Juan Pablo Mejia, Defendant, represented by Joshua Lawrence Weiner, Budd Larner, P.C. & Paul I. Weiner, Law Offices of Weiner & Weiner LLC.

# ORDER

SANDRA J. FEUERSTEIN, District Judge.

## I. Introduction

Plaintiff Rosario Mejia ("Plaintiff") commenced this action pursuant to the Family Medical Leave Act ("FMLA" or "Act") against Defendants Roma Cleaning, Inc. ("Roma" or "Company") and Juan Pablo Mejia ("Mejia")[1] (collectively, "Defendants"[2]). She alleges that the Defendants willfully interfered with her attempts to exercise her rights under the FMLA and retaliated against her for taking leave pursuant to the FMLA.[3] (ECF No. 1 at ¶¶122-130; hereafter, "Complaint".) On January 19, 2016, the Defendants answered Plaintiff's Complaint, generally denying her allegations and raising twenty-two defenses including that "Plaintiff's claims are barred, in whole or in part, by the applicable statue of limitations." (ECF 9 at 15 ("Fourth Separate Defense"); hereafter, "Answer".)

On September 26, 2016, the Defendants filed a motion for summary judgment ("Summary Judgment Motion" or "Motion"), which included Plaintiff's opposition ("Opposition") thereto. (See ECF No. 20). The Motion was referred to Magistrate Judge Gary R. Brown on October 3, 2016. (See D.E. dated 10/03/2016.)

Now before the Court is Magistrate Judge Brown's Report and Recommendation, dated July 6, 2017, that Defendants' Motion be denied. (See ECF No. 26; hereafter, "Report".) On July 17, 17, 2017, Defendants filed their objection to the Report. (See ECF P. 27; hereafter, the "Objection".) The Plaintiff filed a response on August 2, 2017.[4] (See ECF No. 29; hereafter, "Response".) For the reasons that follow, the Court adopts the findings of the Report in part only and declines to follow the recommendation that Defendants' Summary Judgment Motion be denied.

## II. Applicable Standards

### A. Report and Recommendation Standard of Review

Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties. See FED. R. CIV. P. 72(b). Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed de novo. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." Frankel v. City of N.Y., Nos. 06-cv-5450, 07-cv-3436,

# EXHIBIT
# "T"

**UNICORN CROWDFUNDING INC., Plaintiff,**

v.

**NEW STREET ENTERPRISE, INC., d/b/a SOCIALFIX; OSSIAN VENTURES, INC.; and TERESA TATEOSSIAN, Defendants.**

No. 18 Civ. 10110 (PAE).

**United States District Court, S.D. New York.**

June 12, 2019.

Unicorn Crowdfunding, Inc., Plaintiff, represented by Vivek Jayaram, Jayaram Law Group & Wendy Brasunas Heilbut, Jayaram Law Group.

New Street Enterprise, Inc., doing business as Social Fix, Ossian Ventures, Inc. & Teresa Tateossian, Defendants, represented by Joshua Lawrence Weiner, Coughlin Duffy LLP.

Teresa Tateossian, Ossian Ventures, Inc. & New Street Enterprise, Inc., Counter Claimants, represented by Joshua Lawrence Weiner, Coughlin Duffy LLP.

Unicorn Crowdfunding, Inc., Counter Defendant, represented by Vivek Jayaram, Jayaram Law Group & Wendy Brasunas Heilbut, Jayaram Law Group.

## OPINION & ORDER

PAUL A. ENGELMAYER, District Judge.

Plaintiff Unicorn Crowdfunding, Inc. ("Unicorn") brings this action against defendants New Street Enterprise, Inc. d/b/a Socialfix ("Socialfix"), Ossian Ventures, Inc. ("Ossian"), and Teresa Tateossian ("Tateossian") (collectively, "defendants"), alleging violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.,* as well as New York statutory and common law. Defendants bring four counterclaims: (1) breach of contract; (2) quantum meruit; (3) unjust enrichment; and (4) promissory estoppel.

Unicorn now moves to dismiss defendants' counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. For the reasons that follow, the Court denies Unicorn's motion to dismiss.

# I. Background

## A. Factual Background[1]

Unicorn, a Delaware corporation with its principal place of business in New York, is a production company planning to produce *The Unicorn,* a television show created for Bloomberg Television ("Bloomberg") featuring start-ups competing to raise capital from a television audience of potential investors. Unicorn Compl. ¶¶ 1, 9, 11.

In June 2017, before Unicorn's incorporation, Unicorn's representative and largest shareholder, Carl Heil, contacted Socialfix to retain its marketing and design services. AC ¶ 10. Socialfix is a New Jersey corporation in the business of assisting other companies with marketing strategy, brand and content development, video production, and social media marketing. *Id.* ¶ 7. After multiple conversations, Unicorn and Socialfix executed a September 2017 Memorandum of Understanding ("MOU") to establish a marketing plan for Unicorn, including the redesign of Unicorn's logo. *Id.* ¶¶ 11, 15. Defendants allege that, in the MOU, Unicorn allocated Socialfix a $75,000 per month budget for that purpose. *Id.* ¶ 11.

In November 2017, Unicorn's founder and CEO, Brian Brodik, Unicorn's primary investor, Mike Galinas, and Heil initiated

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RICHARD FARMER,                                                      Index No.

                  Plaintiff,

      -against-

LAW OFFICES WEINER & WEINER, LLC,
PAUL I. WEINER, ESQUIRE, LLC.,
PAUL IVAN WEINER, ESQ.,
JOSHUA LAWRENCE WEINER, ESQ.,
BUDD LARNER, A PROFESSIONAL CORP.,
D/B/A BUDD LARNER, P.C.,
HENRY A. LARNER, ESQ., C.E.O,
MARK D. LARNER, ESQ., C.E.O,
MITCHELL RAIT, ESQ. & C.E.O,
PETER JOHN FRAZZA, ESQ., C.E.O,
SUSAN REACH WINTERS, ESQ., C.E.O,
LAW OFFICES OF COUGHLIN DUFFY, LLP,
KEVIN T. COUGHLIN, ESQ., and,
TIMOTHY I. DUFFY, ESQ., et al,

                  Defendants.
-----------------------------------------------------------------x

## AFFIRMATION OF SERVICE

    I, Richard Farmer Plaintiff, declare under penalty of perjury that I submitted today's filings to the Pro Se office, to be submitted via E.C.F., electronic filing, and via email to all the parties involved.

Dated: Queens, New York
       July 30, 2019

                               Respectfully submitted,

                               RICHARD FARMER, Plaintiff
                               Appearing *Pro Se*
                                /S/ Richard Farmer
                               By: Richard Farmer
                               136-20 38th Ave, #3D
                               Flushing, NY 11354
                               (347) 933-9685